THOMPSON HOUSTON ELECTRIC CO. *v.* CITY OF NEWTON *et al.*

(*Circuit Court, S. D. Iowa, C. D.* June 24, 1890.)

1. MUNICIPAL CORPORATIONS—PUBLIC IMPROVEMENTS—ELECTRIC LIGHT.

Under Acts 22d Gen. Assem. Iowa, c. 11, which authorizes cities to establish and maintain electric light plants when the majority of the voters of the city shall by vote approve the same, a city may erect an electric plant for the purpose of furnishing light to its inhabitants in their stores and houses, as well as for lighting the streets and public places of the city.

2. SAME.

The action of a city in authorizing a private corporation to erect an electric plant for the purpose of lighting the city, without any grant of exclusive rights, does not deprive the city of the right, under said statute, to erect an electric plant itself for the same purpose.

3. SAME—BONDS—SUBMISSION TO VOTE.

Where it is intended to pay for said plant by the issuance and sale of city bonds, it is proper to submit to vote the entire matter of erecting the plant and issuing the bonds in one proposition.

4. SAME—ORDINANCE.

Under that provision of said act which provides that the city council may order the submission of the question of electric lighting to a vote, or that the mayor may do so upon petition of a certain number of tax-payers, the adoption of an ordinance providing for the erection of an electric plant is not a condition precedent to the submission of the question.

5. SAME—CONSTITUTIONAL LIMIT OF DEBT.

Where, at the time the issuance of city bonds is authorized by vote, the issuance of such bonds would increase the city debt beyond the constitutional limit, but the bonds are not issued until the debt has been so reduced that their issuance does not bring it beyond such limit, the bonds are not void, since no debt is created till the bonds are issued.

5. SAME—INJUNCTION.

The fact that city bonds were sold and delivered before the ordinance providing for issuing them took effect is no ground for enjoining their payment at the suit of a tax-payer.

In Equity.   On motion for injunction.

*H. S. Winslow* and *Clark Varnum*, for complainant.   *E. J. Salmon* and *J. G. Day*, for defendants.

SHIRAS, J.   From the allegations of the bill filed in this cause, it appears that the complainant is a corporation created under the laws of the state of Connecticut, and is engaged in the business of erecting and operating electric light plants, and furnishing electric power; that by a contract entered into with the city of Newton, Iowa, it obtained the right to erect and maintain an electric light plant in said city, and did so erect and maintain the same, and furnished lights to private citizens, and also, by contract with the city authorities, furnished lights for the streets and public places of said city,—the latter contract terminating January 23, 1890; that, relying upon its agreement with the city, the complainant has expended at least $20,000 in the erection of said electric light plant, and is prepared and is able to furnish all the electric light, both arc and incandescent, needed for lighting the streets and public places of the city, and to supply the wants of the people of said city, which has a population of about 3,000, and is what is termed in the statutes of Iowa a city of the second class; that said city is now proposing to erect and maintain an electric light plant with which to light not only the streets and public places of the city, but also to furnish to the inhabitants light for private use; that it is the purpose of the city authorities to issue municipal bonds to the amount of $14,000 for the erection of such electric light plant, and to tax the property in said city, including that owned by complainant, for the purpose of paying the interest and principal of said bonds; and that the right to erect such electric plant and issue such bonds is claimed under a vote had at the annual city election held March 30, 1890.   An injunction is sought against the erection of such electric plant, and against the issuance of the bonds for such purpose; the bill thus presenting two general grounds, upon which is based the relief sought.

By chapter 11, Acts 22d Gen. Assem. Iowa, it was enacted that cities should have power to establish and maintain electric light plants, or to authorize the erection of the same, "but no such works shall be erected or authorized until a majority of the voters of the city or town, at a general or special election, by vote, approve the same;" and by section 3 of the act it was provided that the city should have power to issue bonds for the purpose of establishing electric plants, subject to the restriction that the total amount of indebtedness for all purposes should not exceed 5 per cent. of the assessed value of the taxable property within the city. The theory of the complainant is that under this statute the city had the option given it in regard to electric plants, and that it could originally have erected the same by vote of the people, but, having elected to authorize private parties so to do, it is estopped from afterwards entering the field as a competitor; that while the complainant has not an exclusive right under its agreement with the city, and cannot object to the city authorizing other private companies or persons to erect and

maintain electric plants in the city, yet complainant has the right to enjoin the city from undertaking the work, because the city can, through the exercise of its taxing power over the property in the city, including that owned by complainant, raise money for the running of the plant, instead of being compelled to provide the same by charging for the use of the light, and thus the city can practically drive complainant out of the field, and destroy the value of its plant, which was erected in the city by an agreement with the municipal authorities.    There is great force in the suggestion thus made.    It is doubtless true that, if the city enters the field by the erection of its own plant, it will have an advantage over the complainant; yet it does not follow that the court can interpose and restrain the city from erecting the contemplated plant.    As already stated, the city did not grant any exclusive rights to complainant; and the latter, when it erected its plant, took the chance as to future competition.    All that is now shown is that the city proposes to erect an electric plant, and to raise the money for so doing by the issuance of bonds in the sum of $14,000.    The statute confers the right so to do upon the city; and I can see no ground justifying the court in interposing by injunction, and preventing the city from establishing its proposed plant.    The suggestion that the city may use its taxing power so as to prevent complainant from fair competition on its part is a suggestion only, and not the averment of a fact.    The city may establish such rates for the lights furnished by it as to enable the complainant to fairly compete therewith.    If it cannot do so, and the city can supply its citizens at a lower rate, are not the latter entitled to the benefit thereof?    It is entirely possible that the proposed action of the city may cause loss to the complainant.    But there is no ground justifying action by the court short of holding that, by the mere action of the city in authorizing the complainant to establish its plant without any grant of exclusive rights, the city thereby deprived itself of the right to erect an electric plant for the benefit of its citizens; and this extreme ground I am not prepared to take.

It is also urged that the city has only the authority to erect an electric plant for the purpose of lighting the streets and public places of the city, and is not authorized to furnish lights for use in the houses and stores of its citizens.    The act of the general assembly giving the right to cities to erect, or to authorize the erection of electric plants, makes no distinction between lights used for public or private purposes; and the right of the city in the erection of its own plant is not limited in any other way than is the right of a company authorized by the city to erect the plant.    It has been the uniform rule that a city, in erecting gas-works or water-works, is not limited to furnishing gas or water for use only upon the streets and other public places of the city, but may furnish the same for private use; and the statutes of Iowa now place electric light plants in the same category.

The next ground relied on in support of the right to an injunction is that the question of establishing the electric plant was not properly submitted to the electors of the city, and that the necessary authority did

not exist in the city authorities to undertake its erection. The statute requires the question of erecting an electric plant to be submitted to the voters. It appears that February 10, 1890, the city council passed a resolution to the effect that, in accordance with section 4, c. 11, of the Laws of the 22d General Assembly of the state of Iowa, there be submitted to the qualified electors of said city at the next general election, on the first Monday in March, 1890, the proposition to issue the bonds of the city of Newton, Iowa, to the amount of not to exceed $14,-000, or so much thereof as in the judgment of said city council may be needed, to be used for the construction of an electric light plant to supply light for the city of Newton and its inhabitants. Certain petitions, signed by 25 or more resident tax-payers in each ward of the city, were presented to the mayor thereof, requesting him to submit at the next general election the question whether an electric light plant shall be established in said city by the municipality, in pursuance of chapter 11 of the Acts of the 22d General Assembly, to be owned and operated by said city, and that, if it be be determined by a majority of the votes cast that such plant be established, the bonds of the city be issued to the amount of $15,000, or so much thereof as in the judgment of the city council should be needed for such work. Thereupon the mayor issued his proclamation addressed to the electors of the city of Newton, and reciting the resolution adopted by the council, and the presentation of the petitions aforesaid, and notifying said electors that at the coming general election the question as set out in the resolution of the city council would be submitted to them, and continuing:

"Those favoring such proposition—that is to say, that an electric light plant be established by said city to supply light for said municipality and the inhabitants thereof, and to provide for the payment of the same by their issuing bonds of said city in an amount of not to exceed fourteen thousand dollars, or so much thereof as in the judgment of said city council may be needed for such purpose, which said bonds shall bear interest at the rate of not exceeding six per cent. per annum, interest to be payable annually, and which bonds shall be redeemable in ten years, and payable in twenty years—shall have ballots either written or printed, and shall be in the following form, 'For electric light plant,' and those opposed to said proposition shall have ballots either written or printed, and in the following form, 'Against electric light plant.'"

The form of the ballots is in exact accordance with the requirements of section 4 of the act of the twenty-second general assembly. The objection urged to the resolution of the council, the petitions of the tax-payers, and the proclamation of the mayor is that the proposition submitted to the voters embraced two matters: (1) Should the city erect an electric light plant? (2) Should the city issue bonds in the sum of $14,000 or less to pay therefor, running 20 years?—and that these two matters should either have been submitted at two different elections, or in two separate propositions at the same election, so that each elector could have voted as he pleased on each proposition. By reference to the act of the twenty-second general assembly, it will be seen that it provides that cities may erect, or authorize the erection of, electric light plants, provided the elect-

ors so determine, and that the cities may issue bonds for that purpose; and then, when providing for the election, it prescribes the form of the ballot to be used. When the electors of a city are called upon to vote upon the question of the erection of an electric plant, it is of the highest importance for them to know what provision is to be made for payment of the expense of such erection; and it seems to me that the true wishes of the voters can be better ascertained by submitting to them the terms upon which the council expect to be able to erect the plant, than by submitting the single question of erecting or not erecting. Voters are not prepared to vote understandingly upon such a question unless they know how it is proposed to raise the funds needed in the erection of the plant. The proclamation of the mayor submitted to the voters the exact proposition that they were called upon to decide, and in a way that could not mislead any one who would take the trouble to read the proclamation; and, while it may be true that some voters might wish to vote for the erection of an electric plant, but against the issuance of bonds for that purpose, and that they did not have the chance to express their wishes is this particular, yet such fact cannot invalidate the election that was held. The question the city council wished to have decided was not as to the abstract views of the tax-payers upon the question of the erection of electric plants, without regard to the manner of paying the cost thereof, but upon the one form of the proposition,—whether the voters favored the erection of such plant by the city when to do so the city would be required to issue bonds to an amount not exceeding $14,000. I cannot see that substantial objection can be taken to the form of proposition submitted; and, the majority of the voters having cast their ballots in favor of the erection of the electric plant, it must be held that thereby the city was authorized to undertake the erection of the plant, and to issue bonds for that purpose.

It is further urged that the city cannot properly undertake the erection of the plant except by the adoption of an ordinance providing therefor; a resolution to that effect being insufficient. The statute of Iowa creating municipal corporations does not make clear when the municipal action should be by ordinance, as distinguished from a resolution. If the passage of an ordinance is needed to authorize the city to enter upon the work of erecting and maintaining an electric plant, such course is still open to the city. I do not think the adoption of an ordinance was necessary to authorize the submission of the question to a vote of the electors. The statute provides that the council may order the submission of the question to a vote, or that the mayor may order the submission upon petition of the requisite number of tax-payers; and this precludes the idea of the necessity of adopting an ordinance as an essential prerequisite to submitting the matter to the electors. It is the action of the voters under the provisions of the statute that authorizes the city authorities to undertake the erection of the plant; and, even though there may be force in the suggestion that an ordinance specifically providing for the erection thereof ought to be passed, I do not see that the fact that such ordinance has not yet been adopted calls for action on the part of the court by way of injunction.

It is also averred in the bill that the issuance of $14,000 in bonds will increase the indebtedness of the city over the constitutional limit of 5 per cent. upon the taxable value of the property within the limits of the city. According to the showing made in the affidavits submitted by complainant, the indebtedness at the time the vote was taken was such that the issuance of $14,000 in bonds would carry the amount due somewhat over the 5 per cent. limitation; but, as appears from the affidavits submitted on behalf of the city, before the city in fact issued its bonds the indebtedness had been reduced by payments thereon so that the addition of the $14,000. to the amount existing at the date of the bonds did not reach the constitutional limit. The vote of the electors did not create an existing indebtedness. It authorized the city to undertake the erection of an electric plant. The city authorities, in carrying on this work, are subject to the constitutional limitation; but no debt was created until the bonds were issued and sold, and at that time the indebtedness was not increased over the limitation by the sale of bonds.

It further appears that on the 28th of April, 1890, the city council passed an ordinance reciting the result of the election on the question of the erection of an electric plant, and providing that the mayor and city clerk are authorized and directed to issue bonds of the city in the sum of $14,000, 20. thereof to be of the denomination of $500 each, and 2Q of $200 each, to be used as needed in the erection of the electric plant. Thereupon a contract for the sale thereof was made with the Citizens' National Bank of Des Moines, whereby the bank agreed to take from the city its bonds to the amount of $14,000, paying par therefor, but the bank preferred to take bonds of $1,000 each rather than in smaller amounts; and thereupon the city council amended the ordinance of April 28th by passing on the 23d of May, 1890, a substitute for the first section, wherein it was provided that 14 bonds of $1,000 each should be issued. The amended ordinance took effect June 2d. On the 31st of May the city authorities delivered to the bank 14 bonds for $1,000 each, and received the pay therefor in accordance with the previous agreement entered into with the bank; the bonds thus delivered bearing date June 2d. It is now urged that the bonds were in fact issued and delivered before the ordinance authorizing the issuance thereof took effect; and therefore the bank, which has been made a party defendant, should be enjoined from selling the bonds, and that they should be declared void. The facts do not present a case of an issuance of bonds tainted with fraud or illegality in the purpose of their issue, wherein it might be necessary, for the protection of the city or its tax-payers, that an injunction should issue to prevent the bonds passing into innocent hands. If these bonds should be delivered back, the obligation would be upon the city to execute and deliver to the bank its bonds in the sum of $14,000, and, while it may have been an irregularity to deliver the bonds to the bank before the amended ordinance took effect, yet it was in fact done, and the city has received the full value therefor; and certainly the complainant, as a tax-payer in the city of Newton, has no ground to invoke the action of a court of equity for its protection in the premises. If the delivery of the bonds before the taking effect of the amended ordinance de-

stroys their validity, which I do not mean to affirm, that is a legal defense thereto.    If there exists ground for equitable interference, it would rather be in favor of the bank than of the tax-payer.

Counsel have presented other points in argument, but none which call for particular remark.    I find no substantial ground calling for the issuance of the writs of injunction prayed for; and the motion therefor is overruled, and the restraining orders heretofore granted are set aside.