[Civ. No. 532. Third Appellate District.—April 28, 1909.]

# EDWARD C. CARY, Appellant, v. J. M. BLODGETT et al., Respondents.

MUNICIPAL CORPORATIONS—POWER OF CITY OF SIXTH CLASS TO SELL LIGHT TO INHABITANTS.—Under section 862 of the municipal corporation act, empowering each city of the sixth class to acquire "works necessary or proper for supplying water for the use of such city, or the inhabitants, or for irrigating purposes therein," and "to acquire, own, and control, maintain and operate . . . gas and other works for light and heat," it is necessarily implied in said grant of power that, when the city has an electric light plant, it has authority to furnish the inhabitants for private use as well as the general public with electric light.

ID.—GRANT OF POWER TO CITIES OF ONE CLASS NOT SPECIAL LEGISLATION.—The grant of power to municipal corporations of any one class is not unconstitutional, as being special legislation. So long as legislation as to municipal affairs operates alike upon all municipal corporations coming within the classes for which the charter exists, it is a "general law" fully authorized by section 6 of article XI of the constitution.

ID.—ELECTION FOR BONDS FOR COMBINED PLANT FOR WATER AND ELECTRIC LIGHT—SEPARATE ESTIMATES OF COST NOT REQUIRED.—Before an election for bonds for a combined plant for water and electric light, it is not essential that separate estimates should be made of the cost of each plant. The proposal being for a definite sum for a single definite plant, though operated for two purposes on the score of economy or efficiency, a single estimate of the cost thereof satisfies the requirement of any reasonable interpretation of the law.

ID.—RIGHTS OF VOTERS.—The proposal to the electors for one combined plant being valid, the voters cannot complain because not afforded the opportunity to vote for one proposition, and against the other. An elector can scarcely ever vote upon that precise proposition which of all the possible and authorized propositions he prefers.

ID.—DUTY OF CITY TRUSTEES—NECESSITY FOR EXPENDITURE—INFORMATION TO VOTERS.—The duty of determining the necessity for the expenditure and the propriety of submitting it to the electors, and the particular phraseology in which it shall be expressed is cast upon the trustees, subject to a reasonable and practicable regard for the right and privilege of the electors to be informed of the purposes and cost of the proposed improvement, that they may exercise at the polls an intelligent and discriminating judgment, as to their own interests and the public welfare.

ID.—FAVORABLE RESULT OF ELECTION—INJUNCTION AGAINST SALE OF BONDS NOT TENABLE.—Where the electors voted the bonds for the combined plant, an injunction was properly refused to restrain the sale or disposal of the bonds.

APPEAL from a judgment of the Superior Court of San Joaquin County. W. B. Nutter, Frank H. Smith, and C. W. Norton, Judges.

The facts are stated in the opinion of the court.

Arthur L. Levinsky, for Appellant.

Edward I. Jones, for Respondents.

BURNETT, J.—The action was brought against the trustees, clerk and treasurer of the city of Lodi, a municipality of the sixth class, to enjoin and restrain them from selling or disposing of certain bonds to the amount of $76,000 which had been voted by the electors at a special election called for that purpose for a combined plant for supplying said city of Lodi and its inhabitants with water and electric light. The decision was in favor of defendants and the appeal is from the judgment on the judgment-roll.

For the general authority to incur the indebtedness and to issue the bonds respondents rely upon the act of the legislature of 1907, entitled "An act authorizing the incurring of indebtedness by cities, towns and municipal corporations for municipal improvements, and regulating the acquisition, construction or completion thereof." The portion of said act sufficient for the purpose of the discussion is as follows: "Sec. 1. Any city, town or municipal corporation incorporated under the laws of this state may as hereinafter provided incur indebtedness to pay the cost of any municipal improvement requiring an expenditure greater than the amount allowed for such improvement by the annual tax levy. Section 2. Whenever the legislative branch of any city, town or municipal corporation shall by resolution passed by vote of two thirds of all its members and approved by the executive of said municipality, determine that the public interest or necessity demands the acquisition, construction or completion of any municipal improvement, including bridges, water works, water rights, sewers, light or power

works or plants, buildings for municipal uses, school houses, fire apparatus and street work or other works, property or structure necessary or convenient to carry out the objects, purposes and powers of the municipality, the cost of which will be too great to be paid out of the ordinary annual income and revenue of the municipality, . . . it may call a special election and submit to the qualified voters of said city, town or municipal corporation the proposition of incurring a debt for the purpose set forth in said resolution, and no question other than the incurring of the indebtedness for said purpose shall be submitted; provided that propositions of incurring indebtedness for more than one object or purpose may be submitted at the same election. The ordinance calling such special election shall recite the objects and purposes for which the indebtedness is proposed to be incurred, the estimated cost of the proposed public improvement,'' etc. (Stats. 1901, p. 27.)

The specific grant of power as to cities of the sixth class, involved in the present controversy, is contained in section 862 of the General Municipal Incorporation Act [Gen. Laws 1906, p. 898] which provides that ''The board of trustees of said city shall have power . . . 3. To contract for supplying the city or town with water for municipal purposes, or to acquire, construct, repair and manage pumps, aqueducts, reservoirs or other works necessary or proper for supplying water for the use of such city or the inhabitants or for irrigating purposes therein. . . . 13. To acquire, own, construct, maintain and operate street railways, telephone and telegraph lines, gas and other works for light and heat; public libraries, museums, gymnasiums, parks and baths.'' . . .

No question is raised by appellant as to the regularity of the proceedings culminating in the vote authorizing the issuance of the bonds, except in regard to the estimate of the cost of the improvement hereinafter to be noticed, but he claims the judgment should be reversed for the following reasons: ''First, the City of Lodi has no right or authority in law to sell to its inhabitants electric light. Second: The bonds voted were illegal and invalid by reason of the fact that no separate estimates were given to the City of Lodi by any engineer prior to the election at which said bonds were voted, showing the estimated cost for a plant for supplying

10 Cal. App.—30

the City of Lodi and its inhabitants with water, or a separate estimate for supplying electric light. Third: The bonds are invalid because there was an estimate only for a *combined plant* for supplying water and electric light. Fourth: The said bonds are illegal and invalid for the reason that the electors were not given an opportunity to vote separately upon the proposition for supplying the City of Lodi and its inhabitants with water, and upon the proposition of supplying them with electric light.''

1. The general rule as to the power and authority of municipalities has been stated by Judge Dillon and approved by the courts as follows: "It is a general and undisputed proposition of law that a municipal corporation possesses and can exercise the following powers and no others: 1. Those granted in express words; 2. Those necessarily or fairly implied in or incident to the powers expressly granted, and 3. Those essential to the declared objects and purposes of the corporation— not simply convenient, but indispensable.'' (1 Dillon on Municipal Corporations, sec. 89.) He further says (sec. 91) that "the rule of strict construction of corporate powers is not so directly applicable to the ordinary clauses in the charter or incorporating acts of municipalities as it is to the charters of private corporations; but it is equally applicable to grants of powers to municipalities and public bodies which are out of the usual range, or which may result in public burdens, or which in their exercise touch the right to liberty or property, or as it may be compendiously expressed, any common-law right of the citizen or inhabitant.'' In this principle announced by Judge Dillon appellant claims to find justification for his first contention. It seems clear, though, to us that in the grant of power to cities of the sixth class, if not explicitly expressed it is at least necessarily implied that the municipality shall have the authority to furnish the inhabitants for private use as well as the general public with electric light. In the grant there is no specification as to the purposes for which the light is to be furnished, and, therefore, we think no purpose for which such works are usually designed and operated was excluded from the contemplation of the legislature in the enactment of the statute. Indeed, it would be a strained and unnatural construction of the language used to hold that the works were to be devoted simply to corporate uses. When the city is expressly author-

ized "to acquire, own, construct, maintain and operate . . . gas and other works for light and heat" the incidents of such ownership and right of operation necessarily follow. Appellant's view derogates from the ordinary meaning of the terms used and writes into the statute a restriction of the use, which we have no right to assume was in the mind of the legislature. If the same grant were made to an individual, no one, of course, would contend for such a limitation, but it is sought here because of the idea that it is hardly within the legitimate functions of a municipality to furnish light to its inhabitants. But the modern decisions recognize this as a public use and not outside of the usual range and scope of municipal authority. In *Jacksonville Electric Light Co.* v. *City of Jacksonville,* 36 Fla. 229, [51 Am. St. Rep. 24, 18 South. 677], it is held that "a charter conferring upon a city council power to provide for lighting the city by gas or other illuminating material, or in any other manner, authorizes the erection and maintenance, at public expense, of an electric plant of sufficient power to light, not only the streets and public places in the city but also to supply in connection therewith, electric lights for the inhabitants of the city in their private houses." A large number of cases is therein cited in support of the court's conclusion, among them being *Thompson-Houston Electric Light Co.* v. *City of Newton,* 42 Fed. 723, *Linn* v. *Chambersburg Borough,* 160 Pa. St. 511, [28 Atl. 842], Opinion of the Justices, 150 Mass. 593, [24 N. E. 1084], and *Crawfordsville* v. *Broden,* 130 Ind. 149, [30 Am. St. Rep. 214, 28 N. E. 849].

In the Thompson-Houston Electric Light Co. case, *supra,* Mr. Justice Shiras said: "It has been the uniform rule that a city in erecting gas works or water works is not limited to furnishing gas or water for use only upon the streets and other public places of the city, but may furnish the same for private use."

The case of *Hyatt* v. *Williams,* 148 Cal. 585, [84 Pac. 41], cited by appellant, is not opposed to the foregoing view. The particular clauses of the Stockton charter therein construed are as follows: "The council shall have power to pass ordinances: . . . (5) To provide for and regulate . . . lighting and watering of the streets, avenues and public places. . . . (17) To provide for . . . such lights . . . as are necessary for the convenient transaction of public business."

It is clear that the power was expressly limited to the purposes therein enumerated. By the specification of the particular purposes, in accordance with a familiar rule of construction, other purposes were excluded. It was very properly said by the court that "The terms of the express grant of the power to provide light for the public purposes named do not indicate any intention to give the distinct and larger power to establish a plant for furnishing light for private use to all the inhabitants of the city who may. desire it, and no such intention can be imputed to the framers of the charter from the language there employed." And it is also held that the power to construct works for the express purpose of supplying light to the inhabitants is not incidental to or included in the power to construct such works to supply light for public streets and public buildings. The difference in that case and this is between the grant of a power for special and expressly enumerated purposes and the grant for all usual and necessary purposes.

The suggestion of appellant that the attempted grant is unconstitutional because it is special legislation, in that it is confined to cities of the sixth class, is answered by the supreme court in the case of *Ex parte Jackson,* 143 Cal. 564, [77 Pac. 457], wherein it is said: "As to such matters—i. e., matters coming within the proper scope of a municipal charter, or, in other words, municipal affairs—there is a distinction recognized by the constitution between the various classes of municipal corporations, which justifies the varying legislation. So long as the legislation as to such matters contained in such a charter operates alike upon all municipal corporations coming within the class for which the charter exists, it is under our constitutional provisions a 'general law' fully authorized by section 6 of article XI of the constitution." The ordinance under review there was one requiring a license tax for carrying on the business of a livery and feed stable adopted in pursuance of the provision of the general municipal corporation act granting such power to cities of the sixth class. It was held to be immaterial whether there was or not any similar provision in the charter of other cities. It is not disputed that the matter before us is a "municipal affair" and therefore the provision in question is not open to the imputation of special legislation.

2. The contention that separate estimates of the cost of a plant for supplying water and of one for supplying light are required is entirely without merit. The law, indeed, contemplates that separate estimates shall be made for each separate improvement or structure, but it does not require the impracticable attempt to determine and declare what part of the cost shall be appropriated to each purpose in case of the construction of one plant or mechanism capable of supplying various needs of the community. The construction for which appellant contends would lead to the absurd result that however advantageous on the ground of economy or efficiency might be the course pursued in the present instance, the plan must be rejected for the reason that the trustees did not adopt the more expensive and probably less feasible scheme of separate plants to furnish water and electric light. The proposal, being for a definite sum for a single definite plant, satisfies the requirement of any reasonable interpretation of the law.

In *State ex rel. Chilocothe* v. *Wilder*, 200 Mo. 97, [98 S. W. 465], the supreme court of Missouri aptly said: "As for the second ground for refusing to register the bonds, to wit, that it contained two propositions, one for a water works plant and the other for an electric light plant, so that the voters were compelled to vote for the whole proposition, and could not vote for one against the other, we think that a reading of the ordinance and the notice of election, indicates that the bonds were to be issued for one plant only, to wit, 'a water works and electric light plant' and that the ordinance and the notice of election in this case do not violate the rule announced by this court in *State* v. *Allen*, 186 Mo. 673, [85 S. W. 531]. We think it was the clearly expressed purpose in this case to erect one plant, on one site, to be conducted by one management and in this manner save the expense of another plant. . . . We know of no reason and none is suggested, why one plant at least so far as the power and machinery are concerned, could not be made available, and we think such was the intention and purpose of the council in passing this ordinance and that the objection of the auditor to the bonds on this ground cannot be sustained. Upon a new submission of the proposition, however, it should be for a combined water works and electric light plant." It may

be said that the submission here was substantially in the language so recommended by the Missouri court.

In harmony with the foregoing the supreme court of this state, in the *City of Oakland* v. *Thompson,* 151 Cal. 572, [91 Pac. 387], held that "where the scheme of the city had in contemplation the acquisition of several distinct parcels of land widely separated for park purposes, the object to be accomplished was single in its purpose, and under the act of 1901 the municipal authorities had discretion to submit at the special election held under the act the question of the acquisition of all such lands as a single proposition to be voted on."

In *People* v. *Counts,* 89 Cal. 15, [26 Pac. 612], it was held that "The specification of a purpose to construct two wagon roads with the bonds to be issued is not objectionable as being expressive of more than one object or purpose."

The cases cited from this state by appellant are easily distinguishable from the foregoing, and if there is a decision anywhere condemning such a proposal as the one before us it should not be followed.

3. What has already been said applies to the third and fourth considerations submitted by appellant. Holding as we do that the proposal presented by the trustees was within the power granted by the statute and the constitution, it follows that the elector cannot complain because he, was not afforded the opportunity to vote for one proposition and against the other. As suggested by the learned counsel for respondents: "The fact is that the elector can scarcely ever vote upon that precise proposition which, of all the possible and authorized propositions he prefers. He may favor the specified purpose but not the specified amount of the proposed debt, or *vice versa,* yet he must vote, if at all, upon a proposition which combines both purpose and amount."

The duty of determining the necessity for the expenditure and the propriety of submitting it to the electors and the particular phraseology in which it shall be expressed is cast upon the trustees, subject to a reasonable and practicable regard for the right and privilege of the electors to be informed as to the purposes and cost of the proposed improvement, that they may exercise at the polls an intelligent and discriminating judgment as to their own interests and the public welfare.

We see no reason to disturb the judgment of the lower court and it is therefore affirmed.

Hart, J., and Chipman, P. J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 24, 1909.