[Civ. No. 1300.    Second Appellate District.—April 4, 1913.]

## CITY OF INGLEWOOD, Respondent, v. JAMES H. KEW, City Clerk of the City of Inglewood, Appellant.

MUNICIPAL CORPORATION—BOND ELECTION—ORDINANCE PROVIDING MANNER.—Where the general statutes confer authority upon a municipality to specify the manner of voting upon bond issues, an ordinance providing the manner of election has the force and effect of statute.

ID.—BOND ELECTION—DISREGARD OF ORDINANCE.—Specific directions in an ordinance providing for a bond election are mandatory, and a disregard thereof renders the vote nugatory.

ID.—BALLOTS—IDENTIFYING MARKS.—Where a voter at a municipal bond election puts the stamp on his ballot in the proper place as to the first proposition voted upon, but as to the second proposition he places it upon the word "no" outside the square, the ballot is void as having an identifying mark.

ID.—STAMP OR MARK NOT IN VOTING SQUARE.—Ballots at a municipal bond election which are stamped by the voter on the word "no" or "yes," but not in the voting square, are mere blanks, not to be counted for any purpose.

Id.—Use of Pencil Instead of Stamp.—Where the cross in the voting
    square of a ballot, cast at a municipal bond election, is made with
    a lead pencil, instead of with the voting stamp as required by ordi-
    nance, the ballot must be disregarded.

Id.—Act of Voting—Deposit of Ballot.—The final deposit of a legal
    ballot in the box is the act of voting.

Id.—Invalid Ballot—Counting in Determining the Number of
    Voters.—If a ballot cast at a municipal bond election is not ex-
    pressive of any wish or preference of the voter which under the law
    may be considered and given effect, such person has not voted, and
    his vote should not be counted even in determining the number
    who have voted at the election.

Id.—Bond Election—Estimate of Cost in Ordinance.—Where an ordi-
    nance calling a municipal bond election discloses that no estimate of
    the cost of the proposed public improvements has been made, a valid
    election cannot be held.

APPEAL from a judgment of the Superior Court of Los
Angeles County and from an order denying a new trial.
N. P. Conrey, Judge.

The facts are stated in the opinion of the court.

O'Melveny, Stevens & Millikin, and Sayre Macneil, for
Appellant.

Robert Young, for Respondent.

ALLEN, P. J.—The city of Inglewood, a municipal corpo-
ration, brought its action in the superior court against James
H. Kew, city clerk, praying for a writ of mandate to compel
the clerk to sign certain bonds claimed by plaintiff to have
been theretofore authorized by the voters of said city. Upon
the trial of the action the court found in favor of plaintiff
city, and by its judgment directed the clerk to countersign as
valid and legal the said bonds. Defendant duly presented a
motion for a new trial, which was denied, and from the judg-
ment and order denying a new trial this appeal is taken.

The facts are these: The board of trustees of the city of
Inglewood adopted two ordinances, numbered 121 and 122,
the first declaring that the public interest, etc., demanded the
construction of a municipal improvement, to wit: fire appa-
ratus; that the estimated cost of said improvement is ten

thousand dollars, and that the same is too great to be paid
out of the ordinary annual income and revenue of the city.
The second ordinance declared that the public interest and
necessity demanded the construction and completion of the
following municipal improvements consisting of street work,
to wit: the improvement of Los Angeles Street and Grevillea
Avenue from designated points to others in a manner specifi-
cally set forth.   Section 2 of the ordinance referred to pro-
vides that the construction and completion of said municipal
improvements are necessary and convenient, and that the
said city of Inglewood proposes to pay a portion of the cost
of said improvements, as follows: To pay an estimated sum
to apply upon the entire cost of said improvements herein-
before described in the following manner: "said city pro-
poses to pay from the proceeds of bonds of the said city of
which the principal of the entire amount proposed to be issued
shall be thirty thousand dollars, thirty-five per cent of the
entire cost of said improvements upon and in connection with
Los Angeles Street, the balance of said proposed improve-
ments upon and in connection with Los Angeles Street to be
paid by the owners by property liable to be assessed to pay
the cost of street improvements; and the said city proposes
to pay the balance of the proceeds of said proposed bonds in
payment and to apply upon the cost of said proposed im-
provements upon Grevillea Avenue not exceeding thirty-five
per cent of the entire cost of said proposed improvements upon
Grevillea Avenue, the balance to be paid by the owners of
property liable to be assessed to pay the cost of street improve-
ments.   It is the intention of the board of trustees to improve
said Los Angeles Street under proceedings taken for that pur-
pose and contemplated by the laws of California whereby the
expense of street improvement or some portion thereof is
meant to be paid by persons owning property liable to be as-
sessed therefor.   If any part of said proposed improvements
be prevented because of any objection by any person or per-
sons or by the refusal of property owners to pay for the
expense thereof other than that to be paid by the city of
Inglewood as hereinbefore provided, or should any part of
said proposed improvement be prevented by protest or objec-
tion of property owners against proceedings taken by the city
of Inglewood under the Street Work Act of California, ap-

proved March 18, 1885, as amended by subsequent statutes, . . . such portion of said improvements as shall not be prevented by any such objections or protest for the improvement of which property owners shall pay that portion of the expenses of such improvement not paid by the city of Inglewood as hereinbefore provided shall be improved in the manner hereinbefore stated; and thirty-five per cent of the cost and expense of the portion of the improvement actually constructed shall be paid out of the proceeds of said bonds hereinafter referred to and the remainder of the proceeds of said bonds, if any, shall be expended by the city of Inglewood in payment of not exceeding thirty-five per cent of the said proposed improvements upon Grevillea Avenue. And it is the intention of said board of trustees to construct said improvements upon Grevillea Avenue in the manner in which it is proposed to improve Los Angeles Street as hereinbefore stated, and if any part of said proposed improvements upon Grevillea Avenue be prevented because of any objection, refusal, or protest hereinbefore described, such portion of said proposed improvements as shall not be prevented shall be improved in the manner hereinbefore stated and not exceeding thirty-five per cent of the cost thereof shall be paid from the proceeds of said proposed bonds.

"Section Three. That the estimated cost of said proposed street improvement upon and in connection with Los Angeles Street as hereinbefore described is $61,000, and the estimated cost of said proposed street improvements upon Grevillea Avenue hereinbefore described is $35,000 and the part of the estimated cost of the said proposed municipal improvements consisting of street work to be paid by the city is $30,000 and the cost of said proposed improvements upon said streets and upon each of them is and will be too great to be paid out of the ordinary annual income and revenue of said city, . . . That it is hereby determined and declared that it is the purpose and intention of the legislative branch of the government of the said municipality to take proceedings for the acquisition, construction and completion by said municipality of said municipal improvement, consisting of street work at the estimated cost of $96,000, and to incur an indebtedness in the principal sum of $30,000 by the issuing of bonds of said municipality, . . ."

Thereafter an ordinance numbered 127 was enacted calling a special election to be held for the purpose of submitting to the qualified voters two propositions, to pay the cost of two certain improvements, one of which improvements being that provided for by ordinance No. 121, and the other being provided for by ordinance No. 122. This ordinance calling the election set forth in terms the same provisions with reference to the estimate, the facts upon which such estimate was based, the conditions existing, and as to the proposed application of the proceeds of the bond money as by ordinances Nos. 121 and 122 provided. This ordinance further provided for the time, place, and manner of election as to each of the propositions, with instructions therein to voters, which instructions were: "To vote for a proposition stamp a cross in the blank or voting square to the right of and opposite the word 'Yes'; to vote against a proposition stamp a cross in the blank or voting square to the right of and opposite the word 'No.' All marks except the cross are forbidden. All distinguishing marks or erasures are forbidden and make the ballot void." The two propositions to be placed upon the ballot were then set forth, to the right of each of which appropriate squares were designated in which the words "Yes" and "No" were printed. This ordinance was duly published and an election was held. Thereafter an ordinance was duly adopted, setting forth the election, the canvass thereof, and a declaration that each of the propositions had received more than two-thirds of the votes cast at the election, and declaring the vote to be in favor of the issuance of both series of bonds; providing for their number and amount and their rate of interest, and the manner in which they should be signed, all in conformity to law. The clerk refused to sign said bonds, and thereupon this proceeding was instituted in the superior court to compel the signing thereof. The clerk in response to said writ, as to the second election with references to the street improvement bonds, denied that any authority existed by reason of the election for the passage of the ordinance declaring the result; denied that such propositions received more than two-thirds of the votes of the voters voting at such election; and denied that the petition stated facts sufficient to constitute a cause of action; and by his return alleged that in his opinion he could not lawfully do the things demanded. Upon the trial of the

action the superior court had before it the ballots, or such portion thereof as were in controversy, which were cast or claimed to have been cast in connection with the voting on the street improvement bonds, and found:

"(a) One ballot was stamped with two crosses made with the voting stamp, one upon each word 'Yes' opposite each proposition voted upon, and there was no cross stamped in the voting square to the right of either word 'Yes' or either word 'No.'

"(b) One ballot was stamped with two crosses made with the voting stamp, one upon each word 'No' to the right of each proposition upon the ballot, and there was no cross stamped in any voting square opposite the words 'Yes' or 'No.'

"(c) One ballot was stamped with a cross in the voting square to the right of and opposite the word 'Yes' opposite the proposition for bonds for fire apparatus; and a cross was stamped upon the word 'No' to the right of and opposite the proposition for street improvement bonds, but no cross was stamped in the voting square to the right of the words 'Yes' or 'No' opposite the proposition for street improvement bonds.

"(d) Three ballots were each marked with two crosses made with a black lead pencil, one opposite each word 'Yes' in the voting square to the right of both propositions upon the ballot; but there was no cross made by the voting stamp anywhere upon any one of said ballots.

"(e) One ballot was marked with a cross made with a black lead pencil in the voting square to the right of the word 'No' opposite each proposition upon the ballot; but there was no cross marked with the voting stamp anywhere upon said ballot.

"That said marks so placed on each of said ballots are distinguishing marks placed thereon by the voter for the purpose of identifying such ballot."

And the court held that all of the votes above specified had distinguishing marks placed thereon and must be rejected, and were by the judgment of the court rejected as void and not legal ballots. The court further finds that 382 votes were cast; that more than two-thirds of the voters voted in favor of the street improvement bonds; that all of the proceedings leading up to and connected with the election upon the part of the board of trustees were legal and valid and authorized the election, and the writ of mandate was accordingly issued.

The specifications of error relate to the question of the sufficiency of the evidence to sustain the finding that 382 was the net total of voters actually voting at said special election; that the evidence is insufficient to sustain the finding that the seven ballots described had distinguishing marks thereon; that the evidence is insufficient to sustain the finding that the board of trustees had authority to pass the resolutions set forth.

The general statutes confer authority upon a municipality to specify the manner of voting upon propositions of this character, and such ordinance has the force and effect of statute. The specific directions of the ordinance are mandatory and a disregard thereof renders the vote nugatory. (*Murphy* v. *San Luis Obispo,* 119 Cal. 631, [39 L. R. A. 444, 51 Pac. 1085].) Section 1211 of the Political Code, provides: "1. In canvassing the votes any ballot which is not made as provided in this act shall be void; (provided, however, certain irregularities not herein involved shall not invalidate such ballots). . . . 4. No mark upon a ballot which is unauthorized by this act shall be held to invalidate such ballot, unless it shall appear that such mark was placed thereon by the voter for the purpose of identifying such ballot." It is thus seen that subdivision 1 declares every ballot not marked as provided by law, to that extent, to be void, while subdivision 4 deals with instances where the stamp is properly placed but identifying marks in addition are placed thereon. There is no controversy as to the invalidating effect of an intended distinguishing mark upon a ballot. The question then is: Can it be said that ballot "C" upon its face indicates that a distinguishing mark was placed thereon by the voter? It is plain from the ballot that the voter knew how to properly and legally express his wishes as to the first proposition, for he placed the stamp in the proper place. When he came to voting upon the second proposition he placed the stamp upon the word "No" outside of the square. This manner of voting was some evidence tending to make it appear that the improperly placed cross was intended as an identifying mark, which being true, the ballot was void. As to ballots "A" and "B," the voter expressed no wish. It is not possible to say whether his vote was in the affirmative or negative. As said in *People* v. *Sausalito,* 106 Cal. 503, [39 Pac. 937], they were mere blanks, not to be counted for any purpose. There re-

mains, then, a consideration of those ballots marked with a pencil, each clearly expressing the wishes of the voter if the same were properly expressed, but under the mandatory clause of the election law and the ordinance they could not be counted because the voter violated the instructions under which, and under which only, he could express his preference. We do not of necessity say that these pencil marks were distinguishing marks, but not legally expressing any wish, they must stand as mere blanks not to be counted for any purpose. It is contended by appellant that even though these ballots were ineffectual to express the voter's wish, still, having complied with all the requirements of the statute in relation to the exercise of the elective franchise other than the disregard of the mandate of the law as to the manner of marking ballots, they must be considered as voting and increasing the number of votes cast at the election in excess of the number found by the trial judges. With this contention we cannot agree. The final deposit of a legal ballot in the box is the act of voting. It matters not that one sign the roster, take his ballot, repair to the booth and formally present to the election officers what purports to be his ballot; nevertheless, if such ballot is not expressive of any wish or preference of the voter which under the law may be considered and given effect, such person has not voted and his vote should not be counted, even in the determination of the number of persons who voted at the election. We believe, therefore, that the evidence before the court, confined as it was to the ballots purported to be cast, justified the court below in its determination that none of said ballots should be counted either for or against either proposition, or considered in determining the number of votes cast at the election.

There remains, therefore, for consideration the question of the jurisdiction and authority of the board of trustees to call the election. Section 2 of the Bond Act requires that the ordinance calling the election shall recite the estimated cost of the proposed public improvements. If the ordinance had been confined to a statement as to such estimated cost in relation to these streets, it would be presumed that an estimate had been previously made. (*Clark* v. *Los Angeles*, 160 Cal. 30, [116 Pac. 722]; *Oxnard* v. *Bellah*, 21 Cal. App. 33, [130 Pac. 701].) In the case under consideration, a reading of the

whole ordinance develops that as to the improvement of Grevillea Avenue no estimate was made, and under the statement contained in the ordinance none was possible. The language employed in these ordinances or resolutions is so involved that it is very difficult to arrive at a proper construction thereof, but we are of opinion that fairly construed it may be said that the ordinances amount to this: That if any portion of the streets be improved the city will pay thirty-five per cent of the cost thereof out of the bond fund; that to what extent such improvement should be made was dependent upon the action of abutting property owners, or possibly incoming officials, or validity of proceedings. In any event, under any construction of such ordinances, it seems to us that they clearly show upon their face that the city council had no actual basis upon which to make an estimate as to the amount of bonds required for the purposes intended. Nor from such basis could they estimate with any certainty whether or not the amount would come within the ordinary income of the city, or the amount required to pay thirty-five per cent of the cost of doing work without knowing and ascertaining definitely that such work would be performed. From aught that appears, a small portion of one of the streets only might be improved, in which event the usual annual income might be adequate for the purpose of paving thirty-five per cent of the cost of the work actually done. Jurisdiction and authority of the city council to call an election and the authority to issue bonds arises after a compliance with the statute in relation to conditions precedent. It is not to be inferred that the legislature, in carefully confining the authority of a municipality to issue bonds, intended to authorize a bond issue the necessity for which is not established by a proper estimate. (*Von Shmidt* v. *Widber*, 105 Cal. 160, [38 Pac. 682].) The right to issue bonds is restricted to instances where such estimated cost exceeds the ordinary annual income. The elector is entitled to know the estimated cost and the necessity which has arisen, and this notice is imparted to him by the election ordinance duly published. We are of opinion that this ordinance failed to give such information to the voter, and the validity of such bonds is not established by the record in this case.

It appears that no controversy exists as to the bonds authorized for fire protection, and such bonds the appellant is willing

to countersign; and we think him fully justified in refusing to sign the street improvement bonds so attempted to be authorized in the manner disclosed.

The judgment and order are reversed.

James, J., and Shaw, J., concurred.