[Civ. No. 5900. Second Appellate District, Division One.—January 28, 1928.]

CITY OF MONROVIA (a Municipal Corporation), Petitioner, v. LEWIS P. BLACK, Respondent.

Jones, Stephenson, Palmer & Moore and William Fleet Palmer for Petitioner.

Robert C. Wygant for Respondent.

SHAW, J., *pro tem.*—This is an original proceeding in this court for a writ of mandate, by which the City of

Monrovia seeks to compel the defendant, as city clerk of said city, to countersign certain proposed city bonds, and to affix its corporate seal thereto. The petition sets up the proceedings leading up to the proposed issuance of bonds, and the matter is submitted to us on the petition and the defendant's demurrer thereto.

The proceedings in question were taken under the act of February 25, 1901 [Stats. 1901, p. 27], providing for the issuance of municipal bonds. This statute must be substantially complied with in the issuance of bonds thereunder. The authority of the legislative body of a city to issue such bonds arises only after a compliance with the statute in relation to conditions precedent. (*City of Inglewood* v. *Kew*, 21 Cal. App. 611 [132 Pac. 780].)

In this case the board of trustees, which is the legislative body of petitioner, passed a preliminary resolution in which they declared "that the public interest and necessity demand the acquisition, construction and completion by said City of Monrovia, of a certain revenue producing improvement," described the improvement, and estimated its cost in three separate parts, each of which was thereafter treated as a distinct improvement. Following this they passed an ordinance, which referred to the preliminary resolution, and its estimates of cost, and submitted to the qualified voters of the city three distinct propositions of incurring a bonded debt to be voted on separately. Except as hereinafter stated, these propositions agreed as to the amount and purpose of the bonded debt with the estimates above mentioned. Pursuant to this ordinance, an election was held, at which each of said propositions received a two-thirds affirmative vote. Thereafter, three ordinances were passed, each providing for the issuance of a separate series of bonds for one of said propositions and requiring the city clerk of said city to countersign the bonds and affix the corporate seal thereto. The defendant has refused to act upon the bond issues based on the first and third propositions, claiming that the proceedings therefor are irregular.

Defendant contends as to each separate proposition that the proceedings are defective because the board of trustees did not in the preliminary resolution declare that the estimated cost of each proposed improvement will be too great to be paid out of the ordinary annual income

and revenue of the city. It is clear from the wording of the preliminary resolution above mentioned that the statement on this point therein made applies only to the aggregate cost of all three of the proposed improvements mentioned therein. Section 2 of the above-mentioned statute provides, omitting immaterial parts, that "whenever the legislative branch of any city . . . shall by resolution . . . determine that the public interest or necessity demands the acquisition, construction or completion of any municipal improvement . . . the cost of which will be too great to be paid out of the ordinary annual income and revenue of the municipality, it may at any subsequent meeting . . . order the submission of the proposition of incurring a bonded debt for the purpose set forth in said resolution to the qualified voters of said city. . . . The ordinance calling such election shall recite the objects and purposes for which the indebtedness. is proposed to be incurred, the estimated cost of the proposed public improvements, the amount of the principal of the indebtedness to be incurred therefor and the rate of interest to be paid on said indebtedness." This statute clearly requires the fact that the cost will be too great to be paid out of the ordinary annual income and revenue to exist separately as to each improvement the issue of bonds for which is to be separately submitted to the voters. Petitioner argues, however, that while the fact must exist, the statute does not require it to be stated in the preliminary resolution, and hence its omission is not fatal to the validity of the bonds. There appears to be no decision on this point, but there are some cases which have a bearing upon it.

In *Clark* v. *Los Angeles,* 160 Cal. 30, 43 [116 Pac. 722], the court said: "The objection that the council, before calling the election, did not make an estimate of the cost of the proposed improvement, is not sustained by the record. Section 2 of the Bond Act requires that the ordinance calling the election shall recite 'the estimated cost of the proposed public improvements,' and the provisions of the section authorize a bond issue when the cost of the improvement is too great to be paid out of ordinary annual revenues of the city. Both the original resolution of intention to establish the improvement and the ordinance calling the election declare that the estimated cost of the proposed improvement

was three million five hundred thousand dollars. This was a sufficient compliance with the statute. It will be presumed from this recital that the council did previously make the estimate stated.''

In *City of Inglewood* v. *Kew, supra,* the court held that a proper estimate of the cost is a necessary part of the preliminary resolution and also said: ''The right to issue bonds is restricted to instances where such estimated cost exceeds the ordinary annual income. The elector is entitled to know the estimated cost and the necessity which has arisen, and this notice is imparted to him by the election ordinance duly published.''

While the point now before us is not precisely the same as that raised in these cases, yet the two points are closely related, being derived from the same sentence of the statute, and the absence from the cases cited of any declaration that the statement now under consideration must be contained in the preliminary resolution or in the election ordinance suggests at least that the courts deciding those cases did not regard it as necessary.

In *Cary* v. *Blodgett,* 10 Cal. App. 463, 470 [102 Pac. 668], the court said: ''The duty of determining the necessity for the expenditure and the propriety of submitting it to the electors and the particular phraseology in which it shall be expressed is cast upon the trustees, subject to a reasonable and practicable regard for the right and privilege of the electors to be informed as to the purposes and cost of the proposed improvement, that they may exercise at the polls an intelligent and discriminating judgment as to their own interests and the public welfare.'' This language suggests a sufficient reason for a distinction between the estimate of cost and the declaration that such cost will be too great to be paid out of the ordinary annual income. The purpose of these preliminary proceedings is to inform the voters of the matters on which they are voting. The mere description of a proposed improvement in general terms such as will comply with the statute does not afford the basis of even an intelligent guess as to its probable cost. An estimate of the cost is within the power of the legislative body alone, who may be supposed to know better than anyone else what is the exact nature of the improvement which they propose and how much they expect it to

cost. It is therefore necessary to enable the voters to act intelligently that they be told what is the estimated cost of the improvement, and accordingly the Bond Act requires the ordinance calling a bond election to recite "the estimated cost of the proposed public improvement," and several other matters necessary for the same purpose of informing the voters. But the statement that the cost will be too great to be paid out of the ordinary annual income is a mere conclusion based on a comparison of the estimated cost with the annual revenue and the expenditures necessary for other purposes. The amount of the annual revenue and expenses of a city can be ascertained by an examination of its records, which are open to any citizen for that purpose, and there is not the same necessity for informing the voters of these matters as of the cost of the improvement. Accordingly, the statute does not require them or the above-mentioned conclusion to be drawn by comparing them with the estimated cost, to be stated in the ordinance calling the election. Neither does it expressly require the revenue and the expenses or the said conclusion to be stated in the preliminary resolution. We see no greater reason for requiring this conclusion to be stated there than in the election ordinance, and hence do not feel that we are required to read such a provision into the statute by implication. In the absence of any such requirement in the statute, the determination of the legislative body that the fact exists on which their power to act depends is sufficiently indicated by their proceeding to act. (*People* v. *Los Angeles*, 133 Cal. 338, 342 [65 Pac. 749]; *People* v. *Ontario*, 148 Cal. 625 [84 Pac. 205].)

■ Defendant also contends that the third proposition submitted to a vote violates the rule that there must be a proposition on the ballot for each distinct, unrelated, and independent object or purpose for which it is proposed to incur indebtedness, showing separately the amount desired for each one. This rule is well established, but we think it was not violated in this case. The third proposition describes the improvement contemplated by it as follows: "the acquisition of additional water bearing lands and the construction and completion of the reconditioning and rebuilding of the mountain water system of the City of Monrovia." As far as appears from the proceedings, the two

matters thus mentioned are parts of one improvement and intended for the single purpose of improving the mountain water system of the city. They are therefore properly joined in one proposition. (*Clark* v. *Los Angeles,* 160 Cal. 317 [116 Pac. 966]; *Hartigan* v. *Los Angeles,* 170 Cal. 313 [149 Pac. 590]; *Clark* v. *City of Manhattan Beach,* 175 Cal. 637 [1 A. L. R. 1532, 166 Pac. 806].)

For the foregoing reasons, it is ordered that a peremptory writ of mandate issue out of this court directed to the said Lewis P. Black, as clerk of the City of Monrovia, commanding him, as such clerk, to countersign and affix the corporate seal to each and all of the said $175,000 issue of bonds and each and all of the said $20,000 issue of bonds.

Houser, Acting P. J., and York, J., concurred.