[No. 13542. In Bank.—February 24, 1890.]

THE PEOPLE EX REL. KERN COUNTY, PETITIONER, *v.* T. A. BAKER, TREASURER, ETC., RESPONDENT.

COUNTY GOVERNMENT ACT—BONDED INDEBTEDNESS—ORDER OF SUPERVISORS—SPECIFICATION OF PURPOSE—INVALID ELECTION—MANDAMUS.—Under section 37 of the county government act, a bonded indebtedness of the county cannot be created unless the order of supervisors submitting the question to the vote of the people specifies the amount of bonds required for each particular purpose. An order submitting the question of the issue of a total amount of bonds, "for the purpose of constructing, grading, repairing, and maintaining bridges and public highways within the county, and for the purpose of erecting and maintaining a county jail and poor-house and hospital within the county," without further specification of the amount required for each purpose, is invalid, and *mandamus* will not lie to compel the county treasurer to issue bonds voted by the people under such order.

APPLICATION for a writ of mandate to the treasurer of Kern County. The facts are stated in the opinion.

*Alvin Fay,* and *Haggin, Van Ness & Dibble,* for Relator.

*T. A. Baker, in pro. per.,* for Respondent.

FOOTE, C.—This is an application upon the part of the county of Kern for a writ of mandate against the treasurer of that county for the issuance of certain bonds. The county is represented by the district attorney and associate counsel; the respondent appears in person, and files his request for a submission in this language: "The brief on behalf of the relator fully and fairly states the objections which have been made by counsel, whose advice I have availed myself of. I therefore desire to submit this cause upon such statement without further argument."

The matter stands in the appellate court upon the petition of the relator and the alternative writ of mandate issued by order of the chief justice ordering the respondent to show cause, etc. It is a matter of regret that an official so tenacious for the proper legal performance of his duty should have relegated the court to the relator's brief for argument to refute the relator's contentions. But we will endeavor to determine what should be done in the premises with the lights before us.

The relator, in the only brief that has been filed by either side in the case, and the fairness of whose statements seems to be conceded by the respondent, says, at page 25: "The only question which has seemed to us open to argument or entitled to consideration is the construction of the clause in section 37, which requires that the supervisors 'shall by order specify the particular purpose (or purposes) for which the indebtedness is to be created.'"

The section (37) of the county government act under which the power is claimed on the part of the board of supervisors to contract a bonded indebtedness is in this language: "The supervisors can only contract a bonded indebtedness other than such as is authorized by section 26 of this act, as follows: They shall by order specify the particular purpose for which the indebtedness is to be created, and the amount of bonds which they pro-

pose to issue, and shall further provide for submitting the question of the issue of said bonds to the qualified electors of the county at the next general election, or at a special election to be called by the board for that purpose. If a special election, none but qualified voters of the county shall be permitted to vote thereat, and it shall be held as nearly as possible in conformity with the general election law of this state. Notice shall be given of such election by publication in some newspaper or newspapers published in the county for four weeks prior thereto. If there be no newspaper so published, then by posting notices for the same time in each election precinct in the county, and at the courthouse door. The ballots shall be printed, 'For the issue of bonds,' or 'Against the issue of bonds.' If two thirds of the electors of the county voting at such election shall vote in favor of issuing bonds, and not otherwise, the board may proceed to issue the amount of bonds specified in the manner provided in this act for funding the floating indebtedness of the county; and all the provisions of this act relating to the issue and payment of bonds in the latter case shall apply to bonds issued under this section, except that such bonds shall not run for more than twenty years; and the board shall levy the tax necessary to create a sinking fund for the payment of the principal of said bonds, in each and every year after their issue, until finally paid. The revenue derived from the sale of said bonds shall be applied to the purpose or purposes specified in the order of the board, and no other. Should there be any surplus, it shall be applied toward the payment of said bonds."

We think that the requirements of the statute were not complied with. The order of the board of supervisors was, that a special election should be held, at which should be submitted to the people "the question of the issue of the bonds of said county, to the amount of two hundred and fifty thousand dollars, in

sums of not less than one hundred dollars nor more than one thousand dollars each, having not more than twenty years to run, and bearing interest at the rate of six per cent per annum, payable semi-annually, for the purpose of constructing, grading, repairing, and maintaining bridges and public highways within the county, and for the purpose of erecting and maintaining a county jail and poor-house and hospital within the county."

That is, the vote is to be taken for the purpose of determining whether bonds of the above amount and kind are to be issued for several distinct purposes; but it is not stated how many bonds, or of what denomination, for each specific purpose, are to be issued on the vote of the people at the special election.

No one can ascertain from that order how many bonds are to be issued by the vote of the people for the purpose of constructing, grading, repairing, and maintaining bridges and public highways within the county, or how many for the purpose of erecting and maintaining a county jail and a poor-house and a hospital within the county.

This we think was essential under the law. The voters should know that the board had determined and declared how many bonds for each specific purpose were to be issued before being called on to vote. It was not intended by that section that the board of supervisors might in such an order lump several specific schemes of bonded indebtedness in one amount, or that the voter should vote such bonds into existence for the board to distribute in their discretion. There is nothing in the order from which to determine what specific bonds or their amount are to be issued or created for any specific purpose.

For these reasons, we think the order was of no effect, that the mandate prayed for should be denied, and the petition dismissed.

Hayne, C., and Belcher, C. C., concurred.

The Court. — For the reasons given in the foregoing opinion, the mandate prayed for is denied, and the petition is dismissed.

The following opinion was rendered on petition for rehearing, March 22, 1890: —

The Court. — We do not think that the opinion heretofore filed in this case ought to be understood as requiring the order of the board of supervisors to state the *number* and *denomination* of the bonds to be issued for each particular purpose. All that was intended was that the *amount* of bonds for each purpose must be stated.

Rehearing denied.