[No. 14029. In Bank. — May 4, 1891.]

89   15<br>d121 673

THE PEOPLE ex rel. MARIPOSA COUNTY, PETITIONER, *v.* GEORGE COUNTS, TREASURER OF MARIPOSA COUNTY, RESPONDENT.

COUNTY GOVERNMENT ACT — CREATION OF BONDED INDEBTEDNESS — SPECIFICATION OF PURPOSE. — Under section 37 of the County Government Act (Stats. 1883, p. 311), providing that when the supervisors wish to contract a bonded indebtedness they shall, "by order, specify the particular purpose for which the indebtedness is to be created, and the amount of bonds which they propose to issue," and shall submit the question of the issue of the bonds to the qualified electors of the county, an order and election proclamation of the board which state that the election is for the purpose of submitting the question of the issue of a specified amount of bonds for the construction of two public wagon-roads, defining the termini of each road, sufficiently specify the particular purpose of the proposed indebtedness.

ID. — CONSTRUCTION OF TWO ROADS — SINGLE OBJECT OF BONDS. — The specification of a purpose to construct two wagon-roads with the bonds to be issued is not objectionable as being expressive of more than one object or purpose.

ID. — SUBMISSION TO VOTE OF PEOPLE — ELECTION PROCLAMATION. — A statement in the election proclamation that the election would be held for the purpose of submitting the question "to the vote of the people of this county " means only the qualified voters or electors, and the order for the proclamation is not invalid because it submits the question to the people, and not expressly to the qualified electors.

ID. — ORDER OF SUPERVISORS — ORDINANCE. — Under section 37 of the County Government Act the board of supervisors is required to act by order, and an ordinance is not necessary for the purposes of that section, though required by the act for some other purposes.

APPLICATION to the Supreme Court for a writ of *mandamus.* The facts are stated in the opinion.

*J. W. Congdon,* and *Garret W. McEnerney,* for Petitioner.

*L. F. Jones,* and *Rosenbaum & Scheeline,* for Respondent.

*C. W. Cross, amicus curiæ.*

VANCLIEF, C. — This is an original application to this court, on the petition of Mariposa County, for a writ of mandate to the treasurer of said county, com-

manding him to sell and dispose of, according to law, bonds of Mariposa County, alleged to have been issued in accordance with section 37 of the County Government Act (Stats. 1883, p. 311), for the purpose of constructing two public wagon-roads in said county. An alternative writ issued, and the case stands upon a general demurrer to the petition.

The section of the County Government Act above referred to is as follows : —

" The supervisors can only contract a bonded indebtedness other than such as is authorized by section 26 of this act, as follows: They shall, by order, specify the particular purpose for which the indebtedness is to be created, and the amount of bonds which they propose to issue, and shall further provide for submitting the question of the issue of said bonds to the qualified electors of the county at the next general election, or at a special election to be called by the board for that purpose. If a special election, none but qualified voters of the county shall be permitted to vote thereat, and it shall be held as nearly as possible in conformity with the general election law of this state. Notice shall be given of such election by publication in some newspaper or newspapers published in the county, for four weeks prior thereto. If there be no newspaper so published, then by posting notices for the same time in each election precinct in the county, and at the court-house door. The ballots shall be printed, ' For the issue of bonds,' or, ' Against the issue of bonds.' If two thirds of the electors of the county voting at such election shall vote in favor of issuing bonds, and not otherwise, the board may proceed to issue the amount of bonds specified, in the manner provided in this act for funding the floating indebtedness of the county; and all the provisions of this act relating to the issue and payment of bonds in the latter case shall apply to bonds issued under this section, except that such bonds shall not run

for more than twenty years; and the board shall levy the tax necessary to create a sinking fund for the payment of the principal of said bonds, in each and every year after their issue, until finally paid. The revenue derived from the sale of said bonds shall be applied to the purpose or purposes specified in the order of the board, and no other. Should there be any surplus, it shall be applied toward the payment of said bonds."

1. Upon the argument of the demurrer the respondent specified several grounds of objection to the petition, the principal one of which is, that the board of supervisors did not, as required by the section above quoted, " by order, specify the particular purpose for which the indebtedness is to be created."

The petition shows that on the seventh day of May, 1888, the board, in regular session, passed and adopted the following orders: —

"Petitions have been received, signed by 598 residents of Mariposa County, to call a special election early in July, and thereat to submit to the electors of the county the question of voting to issue bonds to the amount of seventy-five thousand dollars, running twenty years, to be payable after the expiration of ten years. The funds raised from the sale of said bonds to be applied to the construction of two public wagon-roads in Mariposa County, one from Coulterville to Bear Valley, and one from Mariposa to Yosemite.

" It is ordered that a special election be and the same is hereby called, to be held Monday, July 9, 1888, for the purpose of submitting the issuance of bonds for the building of said roads to Coulterville and Yosemite to the people.

" It is ordered that the following proclamation be issued: —

" PROCLAMATION.

"Public notice is hereby given, that, in accordance with an order of the board of supervisors of Mariposa County,

state of California, made on the seventh day of May, 1888, a special election be held throughout Mariposa County, on Monday, July 9, 1888, for the purpose of submitting to the vote of the people of this county the question:—

"Shall the board of supervisors of the county of Mariposa be empowered to issue bonds to the amount of seventy-five thousand dollars, running twenty years, to be payable after the expiration of ten years, for the purpose of constructing two public wagon-roads in said county, one from Bear Valley to Coulterville, and one from Mariposa to Yosemite? The ballots to be cast, 'For the issue of bonds,' or, 'Against the issue of bonds.' The polls must be opened at six o'clock in the morning of the day of election, and must be kept open until seven o'clock in the evening of the same day, when the polls shall be closed.

"It is ordered that the proclamation be published in the Mariposa Gazette for four weeks prior to said election."

It will be seen that the order and proclamation of the board did state the purpose for which bonds of the county for seventy-five thousand dollars were to be voted and issued, viz., the construction of "two public wagon-roads in said county, one from Bear Valley to Coulterville, and one from Mariposa to Yosemite." This was equivalent to proposing to create an indebtedness of the county to the extent of seventy-five thousand dollars for the purpose expressed, since the issuing of the bonds of the county as proposed would necessarily create such indebtedness. The point most insisted upon under this head is, that the purpose expressed is not a single purpose, but two distinct purposes. There is no complaint, however, that the expression of either of these purposes is not sufficiently explicit and definite. The roads were described as "public wagon-roads," which the law requires to be at least forty feet in width (Pol. Code, sec. 2620), and the termini of each road were defined. This was as definite a description as could well be made without an actual survey of the routes and grades, the expense of

which the board had no authority to incur before it was determined that the county would construct the roads.

The object of the statute in requiring the board to "specify the particular purpose for which the indebtedness is to be created, and the amount of the bonds," is simply to notify the electors of the county of these facts, to the end that they may be enabled thereby to form an intelligent judgment as to the propriety of creating the proposed indebtedness for such purpose; and it would seem that this object is as well accomplished by the specification in the order under consideration as it would have been if the purpose, specified in the same way, had been to construct only one road. Suppose the purpose to be specified had been to extend an existing road by adding ten miles to each end thereof, or to construct two branches to an existing road, or (as in this case) to construct two roads to connect at different points with an existing road (as that from Bear Valley to Mariposa); might not the purpose to create indebtedness for the construction of the two roads, in each of the supposed cases, be regarded as a single purpose? Few purposes are executed by the performance of a single act. The execution of the purpose to construct a single road may require the construction of numerous bridges, and the performance of various kinds of labor in different places.

In *People* v. *Dunn*, 80 Cal. 211, 13 Am. St. Rep. 118, it was held that the act of 1889, entitled "An act to provide a permanent site for the California Home for the care and training of feeble-minded children, and to erect suitable buildings thereon," had but one purpose, and that an appropriation therefor was but one appropriation for a single purpose. The court said: "It was not necessary that there should have been a separate appropriation for the purchase of the land, another for the erection of the buildings, another for the construction of fences, and another for each improvement necessary to the proper completion of the proposed work."

In view of the object of the statute in requiring a specification of the purpose for which indebtedness is to be created, what is the substantial difference between a specification of the purpose to construct one road of twenty miles in length, and an equally definite specification of a purpose to construct two roads, each of ten miles in length? Would not the electors be as well informed as to the particular purpose in one case as in the other?

The only attempted answer to this question by counsel is: 1. That by submitting the question as to the propriety of two roads to one election, " a voter was put in the awkward position of either voting *for* both propositions, or *against* both propositions. While he may have been exceedingly anxious that one of these roads should have been built, he may not have been willing to tax himself for the building of the other; and yet in order to get the one, he had to submit to the other "; and 2. That inasmuch as the order does not specify what portion of the seventy-five thousand dollars was to be expended on each road, " the board of supervisors might expend but the sum of one thousand dollars for the road from Bear Valley to Coulterville, and seventy-four thousand dollars on the other road." Might not these objections be urged with equal force against a purpose to construct a single road? A large portion of the electors might consider one half of a proposed road very beneficial, and much needed by the public; while they might consider the other half, though perhaps more expensive, of very little public benefit. And might not the board of supervisors expend nine tenths of the money appropriated for the construction of the whole road upon that half which will be least beneficial to the public?

A statute of Arkansas authorized any county to subscribe to the stock of *any railroad company* in that state a sum not exceeding one hundred thousand dollars, after obtaining the consent of the inhabitants of the county

at an election held for *that purpose.*   At an election held
under the act, the electors voted in favor of a subscrip-
tion of one hundred thousand dollars to each of *two* rail-
road companies.   The subscriptions and the bonds
authorized by this election were held valid by the su-
preme court of the United States.   (*County of Chicot* v.
*Lewis,* 103 U. S. 164.)

In *McMahon* v. *Board of Supervisors,* 46 Cal. 214, the
purpose proclaimed to the electors was to raise thirty
thousand dollars for " improving highways in said town-
ship, for building bridges, macadamizing and improving
the old county road in said township, and also to ma-
cadamize and improve a portion of the new San Pedro
public road in said township."   The court said: " If
such a proclamation was a compliance with the statute,
it would have been equally so if it had omitted to men-
tion any particular road or highway, and had specified
only that the money was to be expended in the improve-
ment of highways and the building of bridges, generally,
in the township.   The voters would have had no infor-
mation as to what particular highways or bridges it was
proposed to improve or build."   This seems to justify
the inference that if the proclamation had specified each
particular road and bridge to be improved (though the
purpose was to improve many), it would have been suffi-
cient.   The proposal to improve two or more than two
roads or highways in the township was not considered
objectionable, as being expressive of more than one ob-
ject or purpose, although the accomplishment of that
object, or the execution of such purpose, required the
improvement of several roads and bridges.

The decision in the case of *People* v. *Baker,* 83 Cal.
149, as a precedent, should be restricted to a state of
facts substantially similar to the facts of that case.   In
that case the order expressed two purposes for which
the money was to be expended: 1. " The purpose of con-
structing, grading, repairing, and maintaining bridges

and public highways within the county"; and 2. "The purpose of erecting and maintaining a county jail and poor-house and hospital within the county." No particular bridge or highway was specified; nor was there any specification of the dimensions of the jail, poor-house, or hospital; nor of the site upon which either was to be built. From all the information given by the order and proclamation, the electors could neither estimate the probable cost nor form a judgment as to the necessity or usefulness of any one of the proposed improvements. The decision that the order in that case did not sufficiently specify the particular purpose or purposes for which the indebtedness was to be created is undoubtedly correct, but it was based upon a state of facts widely and materially different from the facts of this case.

2. The order is said to be invalid, because it submits the question to the *people*, and not to the *qualified electors*. An election was called, at which "none but qualified electors shall be permitted to vote." (Sec. 37.) And the petition states "that at said election none but qualified voters of Mariposa County were permitted to vote." (Page 10.) The proclamation prescribed by the order states " that, in accordance with an order of the board, . . . . a special election be held throughout Mariposa County, on Monday, July 9, 1888, for the purpose of submitting to the *vote of the people* of *this county,* the question," etc. Undoubtedly the " vote of the people of this county" meant the vote of only those people who were qualified voters or electors, and could not have been otherwise understood by the qualified electors. It was not necessary to use the precise language of the statute.

3. It is claimed that the board should have proceeded by *ordinance*, and not by *order.*

Conceding that the County Government Act for some purposes requires an *ordinance,* whilst for other pur-

poses only an order is required, it is only necessary, in answer to this objection, to say that for the purpose under consideration section 37 of the act requires the board to do what it is thereby required to do "*by order.*"

4. The order and the proclamation do show the purpose to create a bonded indebtedness of the county, and the amount of the bonds proposed to be issued.

I think the demurrer should be overruled.

BELCHER, C., and FOOTE, C., concurred.

The COURT. — For the reasons given in the foregoing opinion, the demurrer is overruled.