NEACY, Respondent, vs. CITY OF MILWAUKEE and others, Appellants.

*April 6—April 26, 1910.*

*Municipal corporations: Bonds for lighting plant: Approval by electors: Amount: Ambiguous proposition: Restraining issuance.*

1. The power of a city of the first class to issue bonds for a municipal lighting plant is conditioned upon the general approval of such issue by the electorate, provided for in sec. 943, Stats. (1898), and a proposition for the issue of bonds under that section must by reasonable intendment include the amount thereof, or at least the maximum amount which is to be approved by the electors.

2. In cities of the first class, bonds for a municipal lighting plant can be issued only for the construction or purchase of the plant, there being no authority for their issuance to defray expenses of its maintenance.

3. A proposition to issue bonds for $500,000 "to erect *and maintain*" a municipal lighting plant, approved by the electors in a city of the first class after the city engineer had made a report that a plant could be erected for $250,000, is so ambiguous that it cannot be said with reasonable certainty that the electors authorized the issue of bonds to any specific amount for the *construction alone* of the plant, nor can it be said that they were not induced to vote in favor of such issue by reason of their approval of the issue of the bonds for purposes of maintenance. The issuance of any part of such bonds is therefore unauthorized and may be enjoined.

APPEAL from an order of the circuit court for Milwaukee county: W. J. TURNER, Circuit Judge.  *Affirmed.*

Suit in equity by plaintiff as taxpayer, on behalf of himself and others, to enjoin the defendants from entering into contract for the erection or purchase of any municipal lighting plant, or any part thereof, or machinery therefor; from paying anything upon any such contract; and from executing or issuing certain bonds therefor under a resolution of the common council.   The complaint alleged that in 1904 the council, having amongst other information the report of the city engineer that a municipal lighting plant of the capacity of 2,500 arc lamps could be erected on what is known as Jones Island, property belonging to the city, for $250,000, passed a resolution in favor of erecting and maintaining a municipal electric light plant at a cost of $500,000.   They caused to be submitted, at a special election, the question, "Shall $500,000 municipal electric light bonds be issued to erect and maintain a municipal electric light plant?" in favor of which a majority of votes were cast in the month of April, 1904; that after various investigations and advice the common council decided to buy a site elsewhere and caused to be issued $150,000 of said bonds, buying and paying for the site and leaving about $83,000 of the proceeds in the treasury.   On March 4, 1907, the council passed another ordinance authorizing the issue of a further $150,000 of said bonds for the erection of a municipal electric lighting plant of the capacity of 1,000 arc lights of 2,000 candle power. In October, 1908, a resolution was adopted authorizing the board of public works to contract for the machinery and equipment for such a plant, together with a suitable building for the same.   The complaint also contained various allegations as to the nonnecessity and impolicy of erecting such plant.   A preliminary injunctional order was issued upon the complaint, and a motion to vacate the same was made by the defendants, setting out more fully council proceedings

and the proposed contract. The circuit court made an order denying the motion to vacate the restraining order, from which the defendants bring this appeal.

For the appellants there was a brief by *John T. Kelly,* city attorney, and *Benjamin Poss,* special assistant city attorney, and oral argument by *Mr. Poss.*

For the respondent there was a brief by *Quarles, Spence & Quarles,* attorneys, and *Wm. C. Quarles,* of counsel, and oral argument by *Wm. C. Quarles.* As to the meaning of the word "maintain," they cited *Moorehead v. Little Miami R. Co.* 17 Ohio, 340; *Central R. Co. v. Collins,* 40 Ga. 582, 624; *Merrill v. Spencer,* 14 Utah, 273; *Rhodes v. Mummery,* 48 Ind. 216; *Hook v. W. & N. R. Co.* 58 N. H. 251.

DODGE, J. It being conceded by the answer that all of the proposed proceedings toward erecting and paying for a municipal lighting plant are taken in reliance upon the ability of the city to issue its bonds for the cost thereof by authority of the referendum vote of 1904 and are dependent upon such issue of bonds, the first and fundamental question is whether that vote is sufficient in law to authorize the present threatened issue of $150,000 of bonds.

Whatever power the city, acting through its common council and other officials, may have to engage in undertakings of the character here considered to be paid for out of the current revenues, the power to do so by the issue of bonds, thereby casting the expense upon the future, is conditioned upon at least general approval by the electorate. Sec. 943, Stats. (1898). While that section is not specific upon the subject, we deem it clear that a proposition for the issue of bonds for a specific purpose must, by reasonable intendment, include the amount thereof, or at least the maximum amount which is to be approved by the electors. Another limitation, at least by implication, found in the charter of cities of the first class is that such bonds, even when approved by the electors, can

only be issued and the proceeds used for the construction or purchase of an electric or gas light plant. No authority exists for issuing bonds to defray the expense of up-keep, repair, or operation. The only proposition which has been submitted to the voters is for the issue of $500,000 of bonds for the construction *and maintenance* of such plant. Does an affirmative answer to that question confer authority to issue $500,000 of bonds, or any less amount, for the construction alone? Probably if it does by fair construction, the reference to *maintenance* might be ignored as mere surplusage and futile. While all reasonable intendments should be indulged in favor of municipal action, nevertheless the policy of the statute is clear to require approval in advance by the electorate of any issue of bonds, and if the submission of that question be so involved and ambiguous that it cannot be reasonably ascertained that the will of the voters has been expressed in favor of the specific project and of the amount of bonds to be issued, the purpose of the statute will be thwarted if, nevertheless, they could be issued by the common council.

After mature consideration we are persuaded that a declaration in favor of the issue and use of $500,000 of bonds for the construction and maintenance of a plant does not with sufficient clearness declare that that amount, or indeed any specific part of it, may be expended in the construction alone. A voter with this question before him, accompanied by knowledge of the report of the city engineer that a plant could be constructed for $250,000, might well understand that the scheme was to provide this $500,000 not alone for the construction, but also for a fund to be expended in repairs and up-keep, or even in meeting the expenses of operation or such part thereof as might exceed annual appropriations. Municipal lighting plants have very much of the experimental both in mechanics and finance, and the early years after their construction may very possibly be fraught with unforeseen

594      SUPREME COURT OF WISCONSIN.      [Apr.

expenditures and deficits. A voter might well believe that the proposition for which he voted included those things, and might well be in favor of postponing to future taxpayers the burden of defraying those experimental expenses rather than enhancing his own present taxes thereby. He might well assume that no more than the estimate of the city engineer would be required for the construction, and yet desire to provide a fund to meet the contingency suggested. Indeed, the very consideration that such expenses of the experiment might be postponed to the future may well have been an inducement to an elector to favor the construction of the plant. Such considerations as these, namely, the possible or probable effect of improper matter submitted in the same proposition tending to influence the voter in determining his choice upon the material matter, were held to invalidate in *State ex rel. Williams v. Sawyer Co.* 140 Wis. 634, 640, 123 N. W. 248, where several illustrative decisions were cited, to which may be added *Elyria G. & W. Co. v. Elyria,* 57 Ohio St. 374, 49 N. E. 335; *Farmers' L. & T. Co. v. Sioux Falls,* 131 Fed. 890; *Leavenworth v. Wilson,* 69 Kan. 74, 76 Pac. 400.

We are persuaded that it is impossible to say with reasonable certainty that the voters have authorized the issue of bonds to any specific amount for the construction alone of a municipal lighting plant, nor that they may not have been induced to vote in favor of the policy by reason of their approval of the use of the bonds for the purposes of maintenance. We conclude, therefore, that the record discloses an attempt by the city council to issue bonds and take the other steps in dependence thereon without the essential statutory prerequisite of a popular vote of approval, and that all such proceedings would therefore be illegal and would result in the subjection of the taxpayers of the city to at least an ostensible burden. From this, of course, results the conclusion that a temporary stay was proper, and the order appealed from refusing to vacate such stay was without error.

*By the Court.*—Order affirmed.