[L. A. No. 2793.   In Bank.—June 30, 1911.]

## PERCY H. CLARK, Appellant, v. CITY OF LOS ANGELES (a Municipal Corporation), et al., Respondents.

MUNICIPAL CORPORATIONS—BONDED INDEBTEDNESS — ELECTION — STATE-MENT OF PROPOSITION ON BALLOT.—A statement on the ballot of the proposition submitted to the voters at an election held for the purpose of authorizing the incurrence of a bonded indebtedness by a munici-pality must necessarily be brief and in general terms.  The amount of the indebtedness must be stated and the general purpose with sufficient certainty to inform the voters, and not mislead them as to the object intended; but the details of the proposed work or im-provement need not be given at length.

ID.—DISTINCT PROPOSITIONS MUST BE SEPARATELY STATED—AMOUNT OF INDEBTEDNESS.—On such an election there must be a separate propo-sition on the ballot for each distinct, unrelated, and independent object or purpose for which it is proposed to incur indebtedness, and showing separately the amount desired for each one, in order that the voter may express his choice on each without thereby affecting the other.  The fact that the resolution or ordinance describes harbor improvements in two parts, those upon one side of a certain line to cost two million dollars, and those upon the other side to cost one million dollars, does not make the parts independent nor preclude their submission together as one proposition for the total sum.

ID.—HARBOR IMPROVEMENT—SUFFICIENCY OF STATEMENT OF PROPOSI-TION.—CITY OF LOS ANGELES.—Where the resolution of intention and the ordinance calling the election described in detail a proposed municipal harbor improvement, a proposition stated on the ballot as follows:  "Shall the city of Los Angeles incur a bonded debt of $3,000,000 for the purpose of acquiring and constructing certain municipal improvements in said city, to wit: the construction of docks, wharves and warehouses, the opening, improving, constructing and maintaining of streets and highways to navigable waters, the constructing and maintaining of canals and waterways, and the acquisition of the necessary lands for said improvement," is suf-ficiently definite to inform the voters that the question presented included the objects and purposes set forth in the resolution and ordinance.

ID.—SINGULARITY OF PROPOSITION.—Such question contains but one propo-sition to be voted on, and hence is not inimical either to section 18 of article XI of the constitution or to the Bond Act (Stats. 1907, p. 609).

ID.—CITY OF LOS ANGELES MAY CONSTRUCT AND MAINTAIN HARBOR IM-PROVEMENTS.—The city of Los Angeles, under various provisions of

its charter, has the power to acquire, construct, and maintain each of such contemplated harbor improvements.

APPEAL from a judgment of the Superior Court of Los Angeles County. Charles Monroe, Judge.

The facts are stated in the opinion of the court.

Scarborough & Bowen, for Appellant.

John W. Shenk, City Attorney, Leslie R. Hewitt, and W. B. Mathews, for Respondents.

SHAW, J.—This is an action against the city and certain of its officers to enjoin the sale of city bonds, amounting to three million dollars, known as harbor improvement bonds, and to declare the same void. A general demurrer to the complaint was sustained and thereupon judgment was given for defendants. The plaintiff appeals.

The defendants claim that the issuance and sale of the bonds in question were authorized by the electors of Los Angeles city at an election called and held for that purpose on April 19, 1910. It is admitted that the amount exceeds the annual income and revenues of the city, and that, under section 18 of article XI of the constitution, they cannot be lawfully sold unless authorized by the assent of two thirds of the qualified electors of the city, voting at an election held for that purpose. Such an election was held and the proposition to incur the indebtedness in the amount of these bonds, by the issuance and sale thereof, was carried by the necessary two-thirds vote. Appellant asserts that the proceedings are void.

1. Appellant claims that the election was unavailing because the question submitted with regard to these bonds included an aggregate debt to be incurred for two or more distinct and independent objects, each of which, it is argued, should have been submitted separately in a separate question.

The constitution declares that no city "shall incur any indebtedness or liability in any manner, or for any purpose, exceeding in any year the income and revenue provided for it for such year, without the assent of two thirds of the qualified electors thereof voting at an election to be held

for that purpose." (Art. XI, sec. 18.) The act providing for such elections requires that the council shall first resolve that the public interest "demands the acquisition, construction or completion of any municipal improvement, . . . to carry out the objects, purposes and powers of the municipality, the cost of which will be too great to be paid out of the ordinary annual income." At any subsequent meeting it may pass an ordinance calling a special election to submit to the voters "the proposition of incurring a debt for the purpose set forth in said resolution, and no question other than the incurring of the indebtedness for said purpose shall be submitted; *provided,* that propositions of incurring indebtedness for more than one object or purpose may be submitted at the same election." This ordinance must "recite the objects and purposes for which the indebtedness is proposed to be incurred." (Stats. 1907, p. 609.)

The resolution of the council declared that the public interest demanded "the acquisition and construction of certain municipal improvements," in the harbor of San Pedro, which had been shortly before brought into the city by annexation of territory. It more particularly described the proposed improvements by dividing them into two parts, to wit: first, "docks, wharves and warehouses" upon or adjacent to the city water front bordering upon navigable waters comprising that portion of the harbor lying southerly of a certain line passing through the center of the turning basin east of Smith Island, together with the extension of streets to said waters, and the making of canals from such streets to such waters, all of which part was estimated to cost two million dollars; second, like improvements on that portion of the harbor lying northerly of said line through the center of said turning basin, of which part the estimated cost was one million dollars, making the total estimated cost of all the improvements three million dollars  The ordinance calling the election also provided for the submission of a separate proposition to incur a debt of three million five hundred thousand dollars to pay the cost of certain electric-light and power works. It stated that the election was to be held to submit "the propositions of incurring debts for the purposes set forth in said resolutions and hereinafter stated." Two purposes were then stated, designated, respectively, as

"first" and "second." The one designated as "first" described all the harbor improvements, stating them in two parts, and giving the estimated cost of each part and the total cost of all, in the same words as in the resolution. It thus presented the proposition for all the harbor improvements as a single "purpose," for which a debt of three million dollars was necessary. The proposition was stated on the ballot as follows:—

"Shall the city of Los Angeles incur a bonded debt of $3,000,000 for the purpose of acquiring and constructing certain municipal improvements in said city, to wit: the construction of docks, wharves and warehouses, the opening, improving, constructing and maintaining of streets and highways to navigable waters, the constructing and maintaining of canals and waterways, and the acquisition of the necessary lands for said improvements?"

It is obvious that the statement of the proposition in the ballot must needs be brief and in general terms. The purpose for which such elections are required is to obtain the assent of the voters to a public debt, to the amount, and for the object, proposed. The amount must, of course, be stated on the ballot; the general purpose must be stated with sufficient certainty to inform the voters and not mislead them, as to the object intended; but the details of the proposed work or improvement need not be given at length in the ballot. The statute provides that the ordinance calling the election shall recite the objects and purposes, and that it must be published daily for seven days, or once a week for two weeks, before the election. It may and should give a fuller description of the object or purpose for which the debt is to be incurred, and the voters may thereby obtain full information on the subject. The question as stated on the ballot was sufficient to inform the voters that the question presented included the objects and purposes set forth in the resolution and ordinance. It remains to consider whether or not, when taken in connection with the resolution and ordinance, it is invalid because it presents two distinct and separate objects, not related to or dependent on each other, without giving the voter an opportunity to distinguish and vote for one and against the other.

The rule seems to be that there must be a separate propo-

sition on the ballot for each distinct, unrelated, and independent object or purpose for which it is proposed to incur indebtedness and showing separately the amount desired for each one, in order that the voter may express his choice on each without thereby affecting the other.

Some examples from the decisions will serve to illustrate what are considered distinct objects. On this point the cases conflict. A proposition to vote a lump sum for waterworks and electric works was held void. (*Stern* v. *Fargo,* 18 N. Dak. 289, [122 N. W. 403, 26 L. R. A. (N. S.) 665].) The contrary was decided in *Kemp* v. *Hazlehurst,* 80 Miss. 443, [31 So. 908]; *Seymour* v. *Tacoma,* 6 Wash. 138, [32 Pac. 1077]; and *State* v. *Wilder,* 200 Mo. 97, [98 S. W. 465]. An election to vote a lump sum to be devoted to the construction of an electric plant and to the maintenance thereof was said to embrace two distinct objects. (*Neacy* v. *Milwaukee,* 142 Wis. 590, [126 N. W. 8].) The construction of waterworks and the purchase of waterworks already constructed have been declared to be different and distinct objects. (*Elyria etc. Co.* v. *Elyria,* 57 Ohio St. 374, [49 N. E. 335]; *Leavenworth* v. *Wilson,* 69 Kan. 74, [76 Pac. 400]; *Farmers etc. Co.* v. *Sioux Falls,* 131 Fed. 912.) Contrary decisions on these points are found in *Nash Co.* v. *Council Bluffs,* 174 Fed. 182; *State* v. *Allen,* 183 Mo. 283, [82 S. W. 103]; and *State* v. *Allen,* 178 Mo. 555, [77 S. W. 868].) In *People* v. *Baker,* 83 Cal. 149, [23 Pac. 364, 1112], the statute provided that the order calling the election should "specify the particular purpose for which the indebtedness is to be created, and the amount of bonds which they propose to issue." (Stats. 1883, p. 311.) The order was for the issue of bonds to the amount of two hundred and fifty thousand dollars, "for the purpose of constructing, grading, repairing and maintaining bridges and public highways within the county, and for the purpose of erecting and maintaining a county jail and poorhouse and hospital." It did not state how many bonds were to be issued for each purpose, nor provide for a separate vote on each. It was held that two distinct and independent purposes were specified, and that, consequently, the election was ineffectual.

On the other hand, in *People* v. *Counts,* 89 Cal. 15, [26 Pac. 612], the order was for the issuance of bonds for seventy-five thousand dollars, the money raised to be used to construct

CLX Cal.—21

two certain and described public wagon roads in the county. The ballot did not separate the two purposes. The court said: "The object of the statute in requiring the board to 'specify the particular purpose for which the indebtedness is to be created and the amount of the bonds,' is simply to notify the electors of the county of these facts, to the end that they may be enabled thereby to form an intelligent judgment as to the propriety of creating the proposed indebtedness for such purpose; and it would seem that this object is as well accomplished by the specification in the order under consideration, as it would have been if the purpose, specified in the same way, had been to construct only one road." The two roads led to the same main county road, but connected at different places. The case of *People* v. *Baker,* 83 Cal. 149, [23 Pac. 364, 1112], was distinguished. It was held that the proposition to construct the two distinct roads connecting with the same main road, embraced but a single purpose within the meaning of the statute quoted. In *Oakland* v. *Thompson,* 151 Cal. 576, [91 Pac. 387], bonds were voted for the purpose of acquiring several distinct and widely separated parcels of land in the city of Oakland, to be converted into separate public parks, for the enjoyment of all the inhabitants of the city. Answering the same objection, the court said: "The scheme is a single scheme, the purpose a single purpose. . . . The plan is a single plan for the acquisition of all these lands for park purposes. . . . Certainly the plan adopted was within the discretionary power of the council under the law, and it enabled every voter to express himself for or against the whole proposition. More than this was not required."

Upon the authority of the decisions last cited, it is clear that the question embracing the harbor improvement bonds is not inimical to the constitution or the Bond Act on this point. The purposes included in the proposition voted on are not so distinct and independent as to preclude the submission of one proposition to incur a single indebtedness for all of them. The purpose intended was a single purpose, that of improving the harbor at San Pedro by the construction thereon of docks, wharves, and warehouses, with the streets and waterways necessary or convenient for their use and for access to them from the land on one side and from the water on the other. All this constituted but one general plan or object. The fact

that the estimated cost was stated in two sums, two million dollars for the improvements on one side of the line described, and one million dollars for those on the other side, does not render the two parts so distinct that they cannot be embraced in one scheme for improving the harbor, nor does it make each an entirely separate and distinct enterprise. The estimate might have given separately the cost of each dock, wharf, warehouse, street, and waterway, without affecting the character of the whole as a single scheme or object. The naming of warehouses does not show a double purpose. Warehouses are a necessary, or at least a convenient, adjunct to a wharf. We hold that the proceedings are not invalid in this particular.

2. The power of the city to construct and maintain these public harbor improvements is clear. Subdivision 8 of section 2, of the charter, confers upon the city power to lay out, open, extend, widen, pave, repave, and improve streets (Stats. 1889, p. 457). Subdivision 7c, of the same section, as amended in 1909, gives power "to acquire or construct and operate public wharves, docks, piers or moles along the seashore, in connection with the transportation of passengers and freight between the ocean and the city." (Stats. 1909, p. 1291.) This appears to cover, by implication at least, all the purposes designated in the ordinance. Warehouses, as stated, are convenient parts of a wharf, being necessary for the safe keeping of goods thereon while awaiting shipment. Waterways are included in the term "dock," a word defined by Webster as "2. An artificial basin or enclosure in connection with a harbor, for the reception of vessels," and "3. The slip or waterway extending between two piers or projecting wharves, or cut into the land for the reception of ships." Section 258 of the charter, as amended in 1909, declares that: "The city of Los Angeles shall also have, throughout the whole of said city, including any such borough, the exclusive power to acquire, construct, own, operate and maintain docks, wharves, piers, canals and seawalls." (Stats. 1909, p. 1303.) This is not made dependent on the creation of any "borough" mentioned in the amendment, but is a clear grant of power to the city, and it sufficiently covers all the subjects mentioned in the ordinance not included in section 2 of the charter, except, perhaps, the maintaining of the streets. Section 262 of the

charter, (Amendment of 1909, Stats. p. 1305), gives power to incur a bonded debt for all the foregoing purposes, including the "maintaining" of the streets in question. From this the power to carry out such purpose and "maintain" the streets is necessarily implied. It is also implied from subdivision 23 of section 2, conferring all powers "necessary 'to the complete and efficient management and control of the municipal property."

All the other points urged, affecting the validity of the bonds, are considered and disposed of adversely to appellant's contentions in the case designated as "L. A. No. 2794," entitled "*Clark* v. *City of Los Angeles, et al.,*" decided on May 31, 1911, *ante,* p. 30, [116 Pac. 722], involving the bonds for electric works, voted on at the same election. The increased debt allowed by section 223 of the charter covers these harbor bonds as well as the electric works bonds.

The judgment is affirmed.

Angellotti, J., Sloss, J., Melvin, J., Henshaw, J., and Lorigan, J., concurred.