[L. A. No. 4062. In Bank.—June 2, 1915.]

# FRANK E. HARTIGAN, Appellant, v. THE CITY OF LOS ANGELES (a Municipal Corporation), et al., Respondents.

MUNICIPAL CORPORATIONS—BOND ELECTION—SEPARATE PROPOSITIONS.—
An ordinance providing for submitting to the voters of an incorporated city the proposition to incur a bonded indebtedness of six million five hundred thousand dollars for acquiring and constructing a certain municipal improvement consisting of works for supplying said city and its inhabitants with electricity, the estimated cost of which is one million, two hundred and fifty thousand dollars, and including the construction and acquisition of a distributing system, the estimated cost of which is five million two hundred and fifty thousand dollars, complies with the provisions of the act of 1901 as amended by Stats. 1913, p. 13, providing for submitting more than one proposition at a single election, as against the objection that there must be a separate proposition on the ballot for each distinct, unrelated and independent object or purpose, and showing expressly the amount to be expended for each one.

ID.—CERTAIN FACTS NOT · TO BE CONSIDERED BY THE COURT IN DETERMINATION.—In determining whether or not the proposed bonded indebtedness was for two distinct propositions concerning which the voters should have been given the opportunity to reject or approve either, or both, the court cannot take into consideration facts not alleged in the complaint or facts not within its judicial cognizance, and local and temporary conditions or public sentiment and local public controversies are not included within the latter class.

ID.—CERTAIN FACTS DO NOT SHOW A DUAL PROPOSITION.—The facts that the one million two hundred and fifty thousand dollars was necessary to complete the plant and save the money already expended thereon, that that amount of the bond money was to be used for that purpose, that the city and its inhabitants were already amply supplied with electricity by public service corporations and that the electricity generated by the proposed plant could be readily disposed of by the city without erecting a distributing plant, do not lead to the conclusion that the proposition is a dual one, the parts of which must be submitted separately.

ID.—WRONGFUL DIVERSION OF MONEY—INJUNCTION.—The use of one million two hundred and fifty thousand dollars, voted for the construction or acquisition of electric generating works, for the purpose of completing an already partially constructed generating plant will not be enjoined as an illegal diversion of the funds, because if the

words "acquisition or construction" are given an effect as broad as their ordinary meaning, the word "completion" in the act is unnecessary.

APPEAL from a judgment of the Superior Court of Los Angeles County. Chas. Wellborn, Judge.

The facts are stated in the opinion of the court.

E. R. Young, for Appellant.

Albert Lee Stephens, City Attorney, Howard Robertson, W. B. Mathews, and William B. Himrod, for Respondents.

SHAW, J.—The plaintiff has appealed from a judgment in favor of the defendants.

The plaintiff as a resident, citizen, and taxpayer of the city of Los Angeles, began the action to enjoin the city and its officers from issuing, signing, or selling certain bonds of the city amounting to six million five hundred thousand dollars. The plaintiff claims that no valid election has been held for the approval of said bond issue by the voters of the city.

The constitutional provision is that no city shall incur any indebtedness exceeding the revenue for the year in which it is incurred "without the assent of two-thirds of the qualified electors thereof voting at an election to be held for that purpose." (Art. XI, sec. 18). The act of 1901, as amended in 1913, providing for such elections, declares that propositions for incurring indebtedness for more than one object or purpose may be submitted at the same election, and that the ordinance calling the election must recite the objects and purposes for which the indebtedness is proposed to be incurred. (Stats. 1913, p. 13.) The rule of the decisions regarding more than one object or purpose is "that there must be a separate proposition on the ballot for each distinct, unrelated and independent object or purpose for which it is proposed to incur indebtedness, and showing expressly the amount desired for each one, in order that the voter may express his choice on each without thereby affecting the other." (*Clark* v. *Los Angeles,* 160 Cal. 321, [116 Pac. 966].)

The election, the validity of which is here attacked, was held on May 8, 1914, in pursuance of ordinances passed for

that purpose under the aforesaid Bond Act.   The ordinance calling the election provided that the proposition should be stated on the ballot in the following form:

"Shall the city of Los Angeles incur a bonded debt of $6,500,000 for the purpose of acquiring and constructing a certain revenue-producing municipal improvement, to wit: Works for supplying said city and its inhabitants with electricity for purposes of light, heat and power, including the construction or acquisition of electric generating works, receiving substations, transmission lines, and the acquisition of lands, water-rights, rights of way, machinery, apparatus and other works and property necessary therefor, the estimated cost of which is $1,250,000; also including the construction or acquisition of distributing lines, conduits and substations, and the acquisition of lands, rights of way, machinery, apparatus and other works and property necessary therefor, the estimated cost of which is $5,250,000."

This proposition was stated on the ballot in the language above given, as a single proposition.   To the right were the words "yes" and "no" printed on the separate lines with voting squares at the side wherein the voter might indicate his choice for or against the proposal as an entirety.   There was no mode provided by which the voter could vote "no" on that part of the proposition relating to the acquisition or construction of generating works with the substations, transmission lines, lands, machinery, and other property necessary therefor, estimated to cost one million two hundred and fifty thousand dollars, and vote "yes" on that part of the proposition embracing the acquisition or construction of distributing lines, conduits, and other property necessary therefor, estimated to cost five million two hundred and fifty thousand dollars.   The contention of the plaintiff is that these two branches or elements of the proposition constituted two distinct municipal improvements which should have been submitted separately in such a manner that the voter could vote for or against either or both, at his option.   The ordinance declaring the necessity for the issuance of the bonds in question described the municipal improvement in the same words as on the ballot.

In support of his claim that this presents two distinct improvements, the plaintiff alleges the following facts which do not appear in the ordinance or on the ballot used at the elec-

tion: Prior to the adoption of the resolution, the city of Los
Angeles had constructed a municipal improvement known as
the Los Angeles Aqueduct. This aqueduct is not otherwise
described, but we take it to be a conduit for the conveyance
of water to Los Angeles for the use of the city and its in-
habitants. Along and upon this aqueduct the city had begun
the construction of a plant for the generation of electricity
and had already expended thereon three million five hundred
thousand dollars, leaving it unfinished. It would require the
expenditure of one million two hundred and fifty thousand
dollars to complete it. At the time and prior to the proceed-
ings for the election the city proposed and now proposes to
expend one million two hundred and fifty thousand dollars
of the bond money in completing this generating plant and
not for the construction or acquisition of new or other elec-
tric generating works. Neither the ordinance nor the ballot
shows that this one million two hundred and fifty thousand
dollars is to be used for the completion of the existing un-
finished generating works. No reference was made to any
unfinished works in any of the proceedings. There was at
that time, and there is now, as the complaint alleges, no neces-
sity for the construction or acquisition of a distributing sys-
tem, being that part of the proposition calling for an expendi-
ture of five million two hundred and fifty thousand dollars.
The reasons for this lack of necessity are stated to be that the
city was then, and now is, adequately supplied with systems
for distributing electric current, that there was and is no
necessity for the city to engage in such distribution, and that
if the city should generate electricity, after completing its
plant, it could dispose of all such electric current without
engaging in the municipal distribution thereof. The plain-
tiff was a voter of the city and entitled to vote at said election,
and desired to vote in favor of incurring the indebtedness of
one million two hundred and fifty thousand dollars for the
completion of the unfinished generating plant and to vote
against the incurring of any indebtedness for the construction
or acquisition of a distributing system. On the proposition
as submitted on the ballot, in order to express his choice in
favor of the one million two hundred and fifty thousand dol-
lars' indebtedness, he was obliged to vote in favor of bonds
amounting to six million five hundred thousand dollars.

In considering the question whether or not the proposed bonded debt was for two distinct purposes concerning which the voters should have been given the opportunity to approve or reject either or both, the court cannot consider, as bearing upon the question, facts not alleged and not within judicial cognizance.  Local and temporary conditions of public sentiment and local public controversies are not of the latter class and they must be alleged in order to become the basis for an argument.  In his brief the plaintiff states that it is a well known fact that the advisability of municipal ownership of an electric distribution system by Los Angeles was, at and before the time of said election, a question which was much discussed and upon which public sentiment was divided; that there were thousands of voters in the city who favored the completion of the generating plant but greatly opposed the city engaging in municipal distribution; that several large companies were engaged in distributing electricity adequately and cheaply to the city and its inhabitants; that the wisdom of the city's taking over this branch of the work was open to serious question and that the voters of the city were greatly divided in their beliefs on the subject, but that the completion of the partially constructed plant was generally favored and the necessity of it was plainly apparent.  The plaintiff alleges that he was a voter of the city and desired to vote in favor of one part of the proposition and against the other part and found himself unable to do so, but it is not averred that there were any other voters so minded.  The argument seems to be that those who favored a municipal distributing system procured the city council to combine that project with the proposition to complete the unfinished generating plant along the aqueduct, in order to make the popularity and necessity of the latter carry the proposition for five million two hundred and fifty thousand dollars to buy or build a municipal distributing system.  If these facts had been alleged, or were susceptible of judicial notice, there might be some force in this argument.  But they are not alleged and we must determine the question solely upon the facts set forth in the complaint.

We are to determine whether or not the facts alleged, —namely, that the one million two hundred and fifty thousand dollars was necessary to complete the generating plant and save the money already expended thereon; that that amount

of the bond money was to be used for that purpose; that the city and its inhabitants were already amply supplied with electricity distributed by public service corporations, and that the electricity generated by the proposed plant could be readily disposed of by the city without the erection by it of any distributing plant, necessarily lead to the conclusion that the proposition is a dual one the parts of which must be submitted separately. We think the question is settled by the decision in *Clark* v. *Los Angeles,* 160 Cal. 321, [116 Pac. 966]. One proposition for bonds, considered in that case, was the expenditure of three million dollars for the construction of harbor improvements in San Pedro Bay, of which two million dollars was to be expended for improvements on the south side of a certain established line and one million dollars for similar improvements on the northerly side of said line. It was urged that this constituted a double object, that the different sums to be expended for the different improvements on the respective sides of the line constituted separate and distinct objects upon which the voters were entitled to express their choice separately. The court held that the purpose intended was a single purpose,—namely, that of improving the harbor of San Pedro by the construction of docks, wharves, and warehouses with the streets and waterways necessary or convenient for their use and for access to and from the land on one side and the water on the other. The court said: ''All this constituted but one general plan or object. The fact that the estimated cost was stated in two sums, two million dollars for the improvements on one side of the line described and one million dollars for those on the other side, does not render the two parts so distinct that they cannot be embraced in one scheme for improving the harbor, nor does it make each an entirely separate and distinct enterprise.''

The municipal improvement for which the six million five hundred thousand dollars was to be expended in the present case is described in the ordinance and on the ballot as ''works for supplying said city and its inhabitants with electricity for purposes of light, heat and power,'' and the description then proceeds to say that this includes both a generating plant and a distributing system, stating the particular elements of the generating plant and of the distributing system and

the estimated cost of each of these two parts of the improvement.

We think it must be conceded that, under the rule as stated in the Clark case, this does not describe two distinct and separate objects or improvements, but merely provides for one system for supplying electricity to the city and its inhabitants, including both the production of the supply and the distribution thereof. Neither the fact that the three million five hundred thousand dollars already expended upon the generating plant would be lost if it is not completed, nor the fact that the plant, when completed, could be leased at a profit, nor the fact that the city could operate the generating plant alone and sell the product readily to distributing companies already in operation and serving the city, nor all of these combined, are sufficient to divide the proposed system, as matter of law, into two improvements or to render it necessary for the council to submit the two parts separately on the ballot. While it might have submitted separate proposals it was not bound to do so. It was a matter within its discretion.

The plaintiff makes the further objection that, although the proposition on the ballot stated that the one million two hundred and fifty thousand dollars was to be used for the "construction or acquisition of electric generating works," the city, in fact, proposes to use said sum for the completion of the already partially constructed generating plant and not for the acquisition or construction of such works, and that this would be an illegal diversion of the funds raised from the proposed bonds. Upon this he insists he is entitled to the relief prayed for by way of injunction to prevent the unlawful use of the bond money. The objection is based upon the language of the Bond Act authorizing the city council when it shall "determine that the public interest or necessity demands the acquisition, construction or *completion* of any municipal improvement" exceeding the annual income, to call a special election and submit the matter to the voters. The argument is that this necessarily implies that the acquisition of the improvement, the construction of the improvement, and the completion of the improvement, each constitutes a separate and distinct proposition which must be submitted separately, and that money voted to acquire or construct improvements cannot be expended for purposes of completing

an improvement already partially constructed. Neither the ordinance nor the ballot, as above stated, mentioned the fact that the money was to be used to complete an unfinished plant. We do not think the words of the Bond Act should be so strictly construed. The purpose, as stated on the ballot, included the acquisition or construction of electric generating works. The word "completion" in the act would seem to have been unnecessary if the words "acquisition or construction" are to be given an effect as broad as their ordinary meaning. It was probably inserted to prevent doubts from arising where an issue of bonds was proposed to finish an uncompleted improvement. It serves no other purpose and does not add anything to the effect that would be given to the other words if it had been omitted. The city would be "constructing" an improvement if it was engaged in the building of the unfinished portion of works already begun. It could accomplish the "acquisition" of an improvement by buying an entire plant, by constructing an entirely new one, or by completing one which it had partially constructed. These words include the completion of unfinished works belonging to the city, that being one method of constructing and acquiring such works. The money voted for "acquisition or construction" could, therefore, lawfully be used in completing the unfinished works. It is not claimed that any one was misled by the description of the generating works as given on the ballot. The cases cited by the plaintiff, to the effect that when money is appropriated for completing a specified building the administrative officers cannot use it for the erection of another building, are not applicable to this question. Such officers are, of course, bound by a specific legislative direction of that character and cannot divert the fund to a different use. Nothing of that kind is proposed here. We find no ground upon which the judgment of the court below can be disturbed.

The judgment is affirmed.

Sloss, J., Henshaw, J., Lorigan, J., Melvin, J., Lawlor, J., and Angellotti, C. J., concurred.