## NATIONAL SURETY CO. v. McGREEVY et al.

### No. 9591.

Circuit Court of Appeals, Eighth Circuit.

April 26, 1933.

Rehearing Denied May 20, 1933.

Henry L. Jost, of Kansas City, Mo. (Sebree, Jost & Sebree, of Kansas City, Mo., on the brief), for appellant.

George O. Pratt, of Kansas City, Mo. (Thomas H. Reynolds and Lathrop, Crane, Reynolds, Sawyer & Mersereau, all of Kansas City, Mo., on the brief), for appellees.

Before STONE, GARDNER, and SANBORN, Circuit Judges.

GARDNER, Circuit Judge.

This is an action at law on an indemnity bond. Appellees as plaintiffs below recovered judgment for $4,770.15, and appellant has brought the case to this court on appeal. The parties will be referred to as they appeared in the lower court.

Plaintiffs were stockbrokers, in business at Kansas City, Mo., and at Tulsa, Okl. On October 26, 1929, their manager received from the State Guaranty Bank of Sperry, Okl., a certificate for thirty-one shares of stock of the Gulf Oil Corporation, with directions to sell the same for the account of the bank. They sold it by wire to an unknown purchaser on the New York Stock Exchange through a New York broker correspondent, and on the same day, but after the sale, they paid to the bank the proceeds of the sale, less their commission for effecting the sale, and the government tax. The stock in fact belonged to one Abe McKnight, whose name had been forged to the purported assignment thereof on the reverse side of the certificate. The bank became insolvent. Plaintiffs settled with McKnight for $4,708.13, and obtained a judgment against the bank for $5,001.02.

Plaintiffs had an indemnity bond executed by the defendant, by which the surety company agreed to indemnify the insured against loss "by reason of having * * * acquired, by purchase or exchange for its own account or the account of another, or as trustee, guardian, executor, or in any other similar fiduciary capacity, or taken as collateral to any loan made by the insured for its own account in any such fiduciary capacity, or taken as collateral to any loan made by the insured for its own account in any such fiduciary capacity, or as collateral to any liability assumed by the insured, any securities, as hereinafter defined, which shall prove: (a) To have been forged, raised or altered; (b) To have been acquired or taken as aforesaid, under a forged, raised, or altered transfer, endorsement, assignment bill of sale, power of attorney or guaranty."

Mr. Dixon, manager of plaintiffs' Oklahoma office, who handled this transaction, testified that the plaintiffs had no interest in the certificate of stock except to find a purchaser for it. The bank guaranteed the genuineness of Abe McKnight's signature, and plaintiffs in turn guaranteed the signature to their New York broker correspondent, and the latter guaranteed the signature to the final purchaser. This witness testified, among other things, as follows: "We received the certificate of stock for the purpose of finding someone to buy it, and in pursuance to that employment we undertook for the bank to make a sale of it at New York City. We had broker correspondents in New York City who handled our business for us at that place and the name of the particular broker who handled this particular matter for us was Josephthal & Company. The only interest we had in this stock was to effect a sale of it for the bank on commission. * * * McGreevy & Company never bought any stock itself or for itself at any time while I have been connected with it. It did not take this particular certificate for the purpose of making a sale to any particular individual, and we have no record and I do not know to whom said certificate of stock was sold."

The court permitted plaintiffs, over the objection of defendant, to introduce evidence indicating that it was intended that the bond should cover such transactions as the one here involved, and that a similar loss had been paid by the surety company.

At the close of all the testimony, both sides moved for a directed verdict. The motion of the defendant was overruled and that of the plaintiffs granted.

In our view of the case the controlling issue is whether the bond, by its terms, covers this loss. This is an action at law based upon this written contract of the parties. If

by mutual mistake or otherwise, the contract does not express the true intention of the parties, the court cannot, at least in an action at law, rewrite it, and unless it is ambiguous, rules of construction cannot be invoked for the purpose of imparting an ambiguity that does not in fact exist. Bergholm v. Peoria Life Ins. Co., 284 U. S. 489, 52 S. Ct. 230, 76 L. Ed. 416; Inter-Southern Life Ins. Co. v. Zerrell (C. C. A. 8) 58 F.(2d) 135; Firemen's Ins. Co. v. Lasker (C. C. A. 8) 18 F.(2d) 375; Callen v. Massachusetts Protective Ass'n (C. C. A. 8) 24 F.(2d) 694; Shepard v. Mutual Life Ins. Co. (C. C. A. 8) 63 F.(2d) 578; Prudential Ins. Co. v. Wolfe (C. C. A. 8) 52 F.(2d) 537; Kirkby v. Federal Life Ins. Co. (C. C. A. 6) 35 F.(2d) 126.

■ The surety company, by this bond, agreed to indemnify against loss sustained by insured by reason of having "acquired by purchase or exchange for its own account, or on the account of another, or as trustee, guardian, executor, or in any other similar fiduciary capacity * * * any securities, as hereinafter defined, which shall prove: (a) to have been forged, raised or altered." Plaintiffs did not acquire this certificate of stock by purchase or exchange. Mr. Dixon, plaintiffs' manager, specifically disclaims any such contention, and his testimony, which stands undisputed, is to the effect that the plaintiffs did not buy this stock themselves, but that they simply took this certificate for the purpose of making the sale, or, as he puts it, "for the purpose of finding someone to buy it."

The word "acquired," as used in this contract, means to become the owner of. The New Century Dictionary defines the word as follows: "To get as one's own." In Webster's New International Dictionary the word is defined as: "To gain by any means; usually by one's own exertions; to get as one's own; as to acquire a title, riches, knowledge, good or bad habits." In Bouv. Law Dict. (Rawle's Third Revision) vol. 1, p. 114, the word is defined as follows: "To make property one's own. To gain permanently. It is regularly applied to a permanent acquisition. A man is said to obtain or procure a mere temporary acquisition." See, also, Federal Trade Commission v. Thatcher Mfg. Co. (C. C. A. 3) 5 F.(2d) 615; In re Okahara, 191 Cal. 353, 216 P. 614; Wulzen v. Board of

Supervisors, 101 Cal. 15, 35 P. 353, 40 Am. St. Rep. 17; Hartigan v. Los Angeles, 170 Cal. 313, 149 P. 590; Parker v. Schrimsher (Tex. Civ. App.) 172 S. W. 165; Creamer v. Briscoe (Tex. Civ. App.) 107 S. W. 635.

But we need not go outside the four corners of this document to determine what is meant by the word "acquired" as used therein, because the word is modified and limited by the words immediately following it. In order to be within the terms of this contract, the instrument must have been acquired "by purchase or exchange." The plaintiffs did not acquire this certificate by purchase or exchange. They were never the owners, but they acted only for the bank in selling this certificate. True, after the sale had been made through their broker correspondent in New York City the plaintiffs advanced the money to the bank for the stock, but in doing this they did not acquire the property, but acted for their New York correspondent, by whom, presumably, they were reimbursed. As said by the Supreme Court in Richardson v. Shaw, 209 U. S. 365, 28 S. Ct. 512, 516, 52 L. Ed. 835, 14 Ann. Cas. 981, "The broker cannot be converted into an owner without a perversion of the understanding of the parties." The bond here very clearly limits the insurer's liability to loss suffered by the insured of property acquired by purchase or exchange. It does not purport to indemnify for losses that might be suffered from making a sale for another, either as agent or on commission, or for any other form of compensation which the insured might choose to adopt for the selling service.

■ There being no ambiguity in the contract, it was error to permit the introduction of evidence bearing upon the purpose for which the bond was given, or the construction which the parties had themselves placed upon this or a similar bond. If this were a suit in equity to reform the contract, such evidence would be pertinent; but in this action at law we must accept the contract as it stands, and, being unambiguous, we are not at liberty to resort to rules of construction.

The court should have denied plaintiffs' motion for a directed verdict, and should have granted the motion of defendant.

The judgment is therefore reversed, and the cause remanded for further proceedings not inconsistent herewith.